## Florence W. Ropiequet, Appellee, v. Aetna Life Insurance Company, Appellant.

Opinion filed March 1, 1941. Opinion amended and rehearing denied April 18, 1941.

OEHMKE & DUNHAM, of East St. Louis, for appellant; E. FRED GEROLD, JR., of East St. Louis, of counsel.

BEASLEY & ZULLEY, of East St. Louis, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff, after a trial before a jury, recovered a judgment for $1,682.32 on a life insurance policy issued by defendant. The policy was dated January 13, 1925, and provided that, in consideration of a quarterly premium of $12.62 to be paid on or before the 13th of January, April, July and October of each year, defendant agreed on the death of insured,

Harold W. Ropiequet, to pay $2,000 to plaintiff, the insured's mother.

The insured and his father and mother lived in East St. Louis, Illinois. The home office of defendant was in Hartford, Connecticut, but it had a branch office in St. Louis, Missouri. The insured died at 4:00 a.m. on January 9, 1939.

On March 3, 1936, the St. Louis office of defendant mailed a letter from the St. Louis office addressed to the father of the insured at East St. Louis, stating that at the request of such father the St. Louis office was inclosing in such letter "loan application form" to be signed by the insured, "date and place of signing inserted and the completed form returned to us. We will then request the Home Office to make the loan for the maximum amount available at the present time." The loan application form was inclosed in such letter.

On March 5, 1936, the insured's father, R. W. Ropiequet in behalf of the insured mailed a letter from East St. Louis to the St. Louis office of defendant stating that he was returning the loan application form duly signed by the insured, and that he understood that upon receipt of such letter the St. Louis office would instruct the home office to make the loan for the maximum amount available. This letter was received by the St. Louis office on March 6, 1936. The loan application form referred to was dated March 5, 1936, and was signed by the insured, and was inclosed with the letter. The insured in this loan application left the amount blank, and it is evident the amount was later filled in by the defendant. By this loan agreement, with the amount so filled in, the insured agreed to pay defendant the sum of $379.41, "with interest at the rate of six per cent per annum, payable on the next anniversary of the policy and annually on each anniversary thereafter," and that "when any interest on this note becomes due and is not paid, the same

shall be added to and become a part of the principal indebtedness evidenced by this note and subject to the same rate of interest.'' Said agreement pledged the policy as security for the payment of such indebtedness. It also authorized and requested that a previous loan of $282.88 and accrued interest thereon be deducted from the amount of the loan.

An employee of the St. Louis office testified that on March 13, 1936, she mailed at St. Louis a letter addressed to the father of the insured at East St. Louis, Illinois. She identified and there was admitted in evidence a copy of such letter, which stated: ''Loan under your above numbered policy has been increased to $379.41. Previous loan and interest were deducted, netting you $78.53. We enclose the company's check for the above amount, cancelled note covering the previous loan and a statement outlining the transaction.'' Such statement of loan was admitted in evidence and was dated March 10, 1936, and showed the amount of the previous loan to be $282.88 and accrued interest of $18 or a total of $300.88, leaving a balance available of $78.53 for the insured on the new loan. She testified such check and such canceled note were inclosed in such letter. She further testified that East St. Louis was across the river from St. Louis and that it would take about 1 day for such letter to get from St. Louis to East St. Louis. The insured's father testified that he ''received the check on the 18th of March,'' and thereupon secured the insured's indorsement on the check and on the same day deposited the check in his bank account for collection. He further testified that he received nothing with the check. The check was dated March 10, 1936, and was for the sum of $78.53. An indorsement on the check shows it was deposited in an East St. Louis bank on March 18, 1936. The insured never made any payment on the last loan.

All premiums on the policy due prior to April 13, 1937, were paid. The premium due April 13, 1937,

was never paid and therefore on April 13, 1937, the policy lapsed by its terms because of such nonpayment except that by the terms of the policy the insurance continued automatically as extended term insurance from April 13, 1937, the due date of the defaulted premium, for the sum insured, less the indebtedness against the policy, for such a period as the cash value of the policy less the indebtedness would purchase according to the American Experience Table of Mortality and 3½ per cent interest.

Defendant assigns as error the trial court's failure to grant defendant's motion for a directed verdict after the close of all of the evidence and the refusal of the court to grant defendant's motion for judgment notwithstanding the verdict. The defendant contends that these motions should have been granted on the strength of calculations made by its actuary who was corroborated by an actuary of another insurance company. These calculations showed that the amount available for the purchase of such extended insurance was only sufficient to continue the insurance until some time on January 8, 1939.

When the policy so lapsed on April 13, 1937, for nonpayment of premium, it became necessary to ascertain and deduct the amount of the then indebtedness against the policy from the cash value thereof so as to determine the amount left for the purchase of extended insurance. The parties agree that the cash value of the policy when it so lapsed on April 13, 1937, was $428, but disagree on the amount of indebtedness against the policy on the date when the last loan was made. Their differences arise principally over when the last loan was made and what method should be pursued in computing the interest due on the then indebtedness.

Defendant's actuary testified that he took the effective date of the loan as being March 10, 1936, on the theory that the check was issued by the home office

that day. He first computed interest on $379.41 (the principal amount of the last note) at 6 per cent per annum from March 10, 1936 to January 13, 1937, the next anniversary date of the policy. He then added such interest which he found to be $19.16, to the principal, making a total of $398.57. He next computed interest at 6 per cent on $398.57 from January 13, 1937, to April 13, 1937, the date when the policy so lapsed, and added the interest, which he found amounted to $5.98, to $398.57, making a total indebtedness of $404.55 on the date when the policy lapsed. He then subtracted the sum of $404.55 from the cash value of $428, which left the sum of $23.45 for the purchase of extended insurance. He then testified that it required $13.66 to provide such extended insurance for 1 full year, that is from April 13, 1937 to April 13, 1938; that he deducted $13.66 from $23.45, which left $9.79 to apply on the last year, that is the year the insured died, he not having lived such full year; that the actual cost of such extended insurance on $1,595.45 for such full last year would have been $13.26; that therefore $9.79 divided by $13.26 times 365 (days in a year) would produce 269.4 days that the policy would actually remain in force after April 13, 1938, and that by so doing the policy as extended continued in force to some time on January 8, 1939, but did not continue in force into January 9, 1939, the day when the insured died.

Such witness was corroborated by the testimony of another actuary who also testified for defendant, but such last actuary testified that the extended insurance according to his computations only continued in force until some time on January 7, 1939.

To sustain her recovery plaintiff relies on the calculations of Roland L. Schmidt, who testified in her behalf. He testified over objection that he first computed interest from March 10, 1936, at 6 per cent per annum on the sum of $379.41 for 1 year instead of

merely to the next anniversary date of the policy, as was done by defendant's actuary, and he found such interest to be $22.76; that he then added such interest to the principal making a total of $402.17. He then computed interest on the sum of $402.17 from March 10, 1937, to April 13, 1937, which interest he found amounted to $2.21, making a total indebtedness of $404.38, as of April 13, 1937. By this method of calculation the amount available for the purchase of extended insurance he found to be $23.62 or 17¢ in excess of the amount arrived at by defendant's actuary. It is claimed this additional 17¢ would be ample to extend the insurance beyond the date of insured's death. Schmidt also testified, on direct examination that he had also used the same dates and method of computation as that used by defendant's actuary and that by so doing he had arrived at the same mathematical result as such actuary so testified to.

Plaintiff contends that the method used by defendant's actuary in computing the interest resulted in charging interest at a rate in excess of 6 per cent per annum because the interest for the period from March 10, 1936 to January 13, 1937, was compounded and added to the principal, instead of being computed for 1 year from March 10, 1937, and thereafter compounded. Plaintiff says that this could not be done under the policy and that interest could only be charged and added to the principal annually, as was done by Schmidt.

We are of the opinion that the method of, but not the dates used in, calculating interest on the indebtedness used by defendant's actuary is the correct one. The policy and loan agreement must be read together. We find no inconsistency between the provisions of the policy and the loan agreement executed by the insured. The terms are plain and unambiguous and must be construed as written. Both the policy and loan agree-

ment provide that interest shall be at the rate of 6 per cent per annum and that when interest is not paid when due it shall be added to the principal and bear the same rate of interest. With reference to when the interest shall become due and payable the policy provides that interest shall be paid at the end of each policy year while the loan agreement states that it shall be paid on the next anniversary and each anniversary thereafter. We interpret the word "anniversary" to mean the same as "at the end of each policy year," which date was the 13th of January of each year. The parties in this case fixed a definite time for the payment of interest and the time so fixed controls. That such provision has the effect of making the first payment of interest come due in a period less than a year, with the result that such interest if not paid will be compounded for the first period in less than a year, does not alter the situation any since the contracts in question specifically provide for such a result. Our statute in force at the time of the issuance of the policy and at the time when the last loan was made specifically authorized the compounding of interest in insurance policy loans (ch. 73, par. 263, Smith-Hurd 1935 Illinois Statutes). Schmidt's method of calculating the interest was unauthorized and it was error to admit his testimony in that regard.

Schmidt also testified that if the effective date of the loan was taken as March 18, 1936, the amount available for extended insurance would be 18¢ in excess of the amount found by the method used by the defendant's actuary. His testimony is not clear in what manner and for what period he computed the interest in arriving at the amount of the indebtedness under the last calculation, and his testimony in this respect was at most a conclusion.

In finally disposing of this case it is necessary to determine from what date interest should be computed on the last loan. This involves the question as to when

the loan became effective, as we are of the opinion that the computation of interest should begin from such date. The policy specifically provides that interest on loans "shall be at the rate of six per cent per annum ...." If the company were permitted to charge interest at 6 per cent per annum before the loan was completed, it would in effect be charging interest in excess of the policy rate.

Plaintiff contends that the loan became effective on March 18, 1936, and that interest should be computed from that date. This contention is based on the testimony of the father of the insured who testified that he first received the check on March 18, 1936. Defendant contends that interest should be computed from March 10, 1936, which was the date of the check.

Defendant also urges that no difference in result would obtain even though the effective date of the loan was taken as March 18, 1936, instead of March 10, 1936. To sustain this argument defendant points to the testimony of one of its witnesses who testified to such effect but gave no figures, and to the offer of testimony by its actuary on the same subject and to the same effect, which offer was rejected by the court and is one of the errors assigned. We do not believe that such excluded testimony was necessary in order to make the computation in this case. Once the effective date of the loan is determined this court, on its own initiative, may calculate the interest. (*People ex rel. Com'rs of Highways v. Board of Sup'rs of Madison County,* 125 Ill. 9.)

Neither party has cited any precedent or authority whatever to aid us in deciding the point involved. The respective briefs contain no argument on the point but amount to a mere statement of the respective contentions. Defendant makes no claim that interest should be computed from March 5, 1936, the date of the last loan agreement. The contract for the loan required an offer and acceptance. In determining the date of the loan we must take into consideration the surrounding

facts and circumstances in order to ascertain when the minds of the parties met and the contract became complete. The insured made his offer for the loan by mail and by his conduct, in the absence of contrary instructions, impliedly if not expressly, authorized the defendant to accept the offer by the same medium or mode of communication. (*Geary v. Great Atlantic & Pacific Tea. Co.*, 366 Ill. 625, 17 C. J. S., p. 400, par. 52.) Taking the evidence most favorable to defendant, the earliest date when it can be said the contract was complete was on March 13, 1936, the date when the defendant first communicated its acceptance of the offer by mailing at St. Louis its letter inclosing check and statement of loan to the insured. It is, therefore, our opinion that the loan first became effective on and began to draw interest from March 13, 1936.

The manner of computing time and interest is governed by section 10, chapter 74 of our statutes, which provides in substance that, first, in all computations of time and of interest a month shall be considered to mean a calendar month and a year shall consist of 12 calendar months, and second, in computations of interest for any number of days less than a month a day shall be considered a thirtieth part of a month and interest shall be computed for such fractional part of a month upon the ratio which such number of days shall bear to thirty. This statute was construed in *Collins v. Montemy*, 3 Ill. App. 182, where the court held that under this section a note dated February 12, 1875, due nine months after date, matured November 15, 1875, when the defendant was allowed 3 days' grace. In interpreting the word "month" in 62 Corpus Juris, p. 970, par. 18, it is said: "Where 'month,' as employed in a statute . . . or contract . . . means calendar month, a period of a month or months is to be computed not by counting days, but by looking at the calendar, and it runs from a given day in one month to a day of the corresponding number in the next or

specified succeeding month, except where the last month has not so many days, in which event it expires on the last day of that month." See also *Daly v. Concordia Fire Ins. Co.,* 16 Colo. App. 349, 65 Pac. 416; *McGinn v. State,* 46 Neb. 427, 65 N. W. 46; *Griffith v. Griffith,* 31 Del. 1, 108 Atl. 209; *English v. Ozburn,* 59 Ga. 392; *In re Albrecht's Estate,* 118 Misc. 737, 194 N. Y. S. 432.

While the defendant, as we have held, had the right to compound interest, it could, of course, waive or abandon such right as to any period. In its statement of loan dated March 10, 1936, mailed by its branch office to the insured on March 13, 1936, the defendant stated that the interest "accrued" as of March 10, 1936, on the prior loan of $282.88 was $18.00. The insured had the right to accept and act upon this statement as being true. On the trial the defendant's witness Keffer, its statistician, testified "I have the company record concerning details of the loan of $379.41 of which I have testified. I have made a calculation of interest on a previous loan of $282.88 from February 21, 1935, to March 10, 1936, and according to my calculations it was $18.01. The records show that the amount of $18.00 interest was charged on that previous loan." No issue was made in the trial court as to the correctness of this calculation, and we therefore accept defendant's figure of $18.00 as the proper interest charge on the previous loan.

Following the statute and such decisions, and using the method of computation used by defendant's actuary, our computation based on the effective date of the loan as being March 13, 1936, and with interest at the rate of 6 per cent per annum is as follows: The prior loan of $282.88 plus interest of $18 as computed by defendant's actuaries to March 10, 1936, plus interest on $282.88 from March 10, 1936, to March 13, 1936, amounting to $.14, together with the new advance of $78.53 makes a total loan of $379.55 as of March 13,

1936. Interest on $379.55 from March 13, 1936, to January 13, 1937, would be $18.98, which added to $379.55 would make $398.53. Interest on $398.53 from January 13, 1937, to April 13, 1937, would be $5.98, which added to $398.53 would make $404.51, or the amount of principal and interest due defendant on the last loan at the time when the policy lapsed. Deducting $404.51 from $428, the admitted cash value of the policy at the time the policy lapsed, would leave $23.49 as the amount available for extended insurance. Subtracting from $23.49 the sum of $13.66, which was the amount charged by defendant's actuaries for extended insurance for the first year or from April 13, 1937, to April 13, 1938, would leave a balance of $9.83 left to apply on the last year, that is the year during which defendant died. Adopting the method used by defendant's actuaries, dividing $9.83 by $13.26 times 365 equals 270.5 days that the extended insurance would carry during such last year beginning April 13, 1938, which 270.5 days would expire sometime after 4:00 a.m. on January 9, 1939.

Therefore we find that the extended insurance was in force at the time the insured died.

In the view we have taken, although it was error to admit the testimony of the witness Schmidt as to his first method of calculation, we find that the exclusion of such testimony would not have changed the result and therefore its admission did not constitute reversible error.

The trial court did not err in overruling the motions of defendant for a directed verdict and for a judgment notwithstanding the verdict.

No question has been raised as to the amount of the judgment being for the proper amount if plaintiff is entitled to recover, so we do not consider such question.

There being no reversible error, the judgment of the trial court is affirmed.

*Judgment affirmed.*