(No. 52721.—

EDWARD T. O'CONNOR, County Treasurer, Appellant, v. A & P ENTERPRISES *et al.*, Appellees.

*Opinion filed June 20, 1980.*

Michael M. Mihm, State's Attorney, of Peoria (Roberta L. Szydlowski, Assistant State's Attorney, of counsel), for appellant.

Baudino & Potter, of Farmington (John C. Potter, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

More than 500 owners of real estate in Peoria County paid their taxes under protest and, upon application for judgment by the county collector, filed objections. The objectors rely upon Public Act 80—247, which established a new procedure for placing valuation on farmland, farm buildings and farm dwellings. The objectors also contend that the "multiplier" was wrongfully applied to the assessment of farm property. The collector contends that Public Act 80—247 is unconstitutional and that the "multiplier" was properly applied to the assessed valuation of farmland. The circuit court of Peoria County upheld the validity of the act in question but certified that more

than 500 objections to the application for judgment contained a common question of law and that the resolution of the constitutionality of Public Act 80–247 would "materially advance the termination of the more than 500 tax objection cases now pending." The collector filed an application for leave to appeal from the order of the court pursuant to our Rule 308 (73 Ill. 2d R. 308). The appellate court allowed the collector's application for leave to appeal. The objectors then filed a motion for leave to transfer the case to this court pursuant to Rule 302(b) (73 Ill. 2d R. 302(b)), which motion was allowed.

Thus, two issues are before this court: (1) whether Public Act 80–247 is constitutional, and (2) if so, whether the equalizing factor or multiplier established by the board of review to equalize assessments between the townships shall be applied to property assessed in accordance with the provisions of Public Act 80–247.

Public Act 80–247 was enacted by the General Assembly in 1977 and established a different procedure for fixing the assessed valuation of farm property from that formerly employed, and from that now employed in determining the assessed valuation of other real property. Public Act 80–247 added sections 20e and 20f to the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, pars. 501e, 501f) and amended certain other sections, including section 1, wherein a definition of "farm" was incorporated in section 1(25) (Ill. Rev. Stat. 1977, ch. 120, par. 482(25)). Section 20e provides essentially that the farm value formula for arriving at the value of the best grade of farmland within the county will be determined by the Department of Local Government Affairs, using the value per acre of agricultural products sold, the average value per acre of principal crops for the most recent three years, plus 10% of the average sale price per acre for the same 3-year period. This section further provides that farmland

of lesser value than that classified as the highest or best grade within the county shall be valued for assessment purposes by local assessment officials on the basis of its productivity. The specific language used in Public Act 80—247 will be quoted below in the discussion of the various challenges to its validity and application.

In *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, this court distilled from the proceedings of the constitutional convention the breadth of the authority of the General Assembly to raise revenue through taxation under the 1970 Constitution. This court there construed that authority broadly, and declined, through judicial interpretation of constitutional provisions, to fulfill the fears of the convention Committee on Revenue and Finance by placing a narrow and unintended limitation upon the General Assembly's authority in the field of taxation. (*Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 424.) In considering the challenges to Public Act 80—247, we must accord similar deference to the legislature and not limit or curtail, through judicial construction, the revenue powers which are plainly vested in the General Assembly. The Act should be liberally construed to achieve a discernible purpose. We must also be guided by the accepted principle that legislative enactments are presumed constitutional and that reasonable doubts concerning the validity of a statute must be resolved in its favor. (*North Shore Post No. 21 of the American Legion v. Korzen* (1967), 38 Ill. 2d 231, 233.) In *Hoffmann v. Clark* this court upheld the legislature's classification of farm property for special treatment for assessment purposes. The provisions of Public Act 80—247 again specially classify farm property for assessment purposes and provide another method for fixing its assessed value. The legislature's authority to classify is not challenged. The validity of the Act is challenged on several other grounds, however.

We first consider the collector's contention that, under

the provisions of the enactment defining "farm" found in section 1(25) of the Revenue Act of 1939, improvements on the farm that are neither currently in use, nor contribute toward the productivity of the farm, are not to be included in the valuation. This, it is argued, constitutes an exemption from taxation. Article IX, section 6, of the Constitution of 1970 authorizes the General Assembly to exempt certain kinds of property from taxation. Since improvements on farm property do not fall within any class authorized to be exempt from taxation by the Constitution, it is argued that this statute exempting improvements to farm property from taxation is unconstitutional.

We do not agree that this provision constitutes an "implied exemption of property from taxation." It is, instead, a recognition by the legislature that certain structures located on a farm may have become obsolete by changes in farming methods or practices, and either have a greatly diminished value, or possibly no value at all in connection with the farming operation when considered as a part of the farm as a whole. The corncrib, once an essential structure on every farm for the storage of ear corn, has become primarily a relic of the past, due to the almost universal practice of combining the corn and drying and storing it as shelled corn. Horse barns now stand idle due to the disappearance of the use of horses for the powering of farm machinery, and many dairy barns are no longer used because of the decrease in the number of small dairy herds. The legislature has provided that these buildings should be valued on the basis of their contribution to the farm operation. If they are used for either their intended purpose, or for a substitute purpose, the appropriate value can be placed on them. Section 1(25) of the Revenue Act of 1939 provides that these buildings shall continue to be valued as a part of the farm. If they contribute nothing to the productivity of

the farm then, of course, the buildings would add nothing to the value of the farm. Being valued as a part of the farm, the failure to place a value on these buildings is a method or procedure of valuation and not an exemption from taxation. Just as a well that is no longer usable or a shade tree that is dead does not enhance the value of the farm, a barn or a corncrib that is not usable adds nothing to the value of a farm.

The collector's principal contention is that Public Act 80—247 is so vague, indefinite and uncertain that men of ordinary intelligence must guess at its meaning and differ in their application of the Act, which, it is argued, renders the Act unconstitutional as a violation of due process. First, the collector contends that the definition of the word "farm" as used in section 1(25) of the Revenue Act of 1939, is vague and insufficient. Section 20e provides:

> "Any owner of a 'farm', as defined in Section 1 of this Act, \*\*\* shall be eligible for a farm value assessment on such farm real property pursuant to this Section." (Ill. Rev. Stat. 1977, ch. 120, par. 501e.)

Section 1(25) of the Revenue Act defines "farm" as follows:

> " 'Farm' when used in connection with valuing land and buildings for an agricultural use shall mean any parcel of land used solely for the growing and harvesting of crops; for the feeding, breeding and management of livestock; for dairying or for any other agricultural or horticultural use or combination thereof; including, but not limited to, hay, grain, fruit, truck or vegetable crops, floriculture, mushroom growing, plant or tree nurseries, orchards, forestry, sod farming and greenhouses; the keeping, raising and feeding of livestock or poultry, including dairying, poultry, swine, sheep, beef cattle, ponies or horses, fur farming, bees, fish and wildlife farming." Ill. Rev. Stat. 1977, ch. 120, par. 482(25).

We view the definition of "farm" in section 1(25) as being rather specific, much more so than the term "used

for farming or agricultural purposes" contained in section 20a—1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 501a—1), which was construed by this court in *Hoffmann v. Clark.* It is not necessary that each term used in the statute be specifically defined and that the exact application of the statute to all factual variations be delineated therein. The application of the statute is of necessity placed in the hands of the various assessment officers and administrative bodies which, in turn, have the express and implied authority to adopt rules for the guidance of persons involved in the assessment procedure and assure the uniform application of the statute. (*Turner v. Wright* (1957), 11 Ill. 2d 161, 173; see, *e.g.,* Ill. Rev. Stat. 1977, ch. 120, pars. 494, 592.2.) The Department of Local Government Affairs was granted the authority to prescribe rules and regulations for local assessment officers relevant to the assessment of real property. (Ill. Rev. Stat. 1977, ch. 120, par. 611(3).) Thus, the local assessment officers, in applying the Act, will not be left to conjecture as to the meaning of certain words and phrases used by the legislature, but will be guided by, and an acceptable degree of uniformity will be achieved by, the rules and regulations adopted for the guidance of assessment officers. If there are borderline cases where the Act is erroneously applied, these uncertainties can be resolved through judicial interpretation. The fact that such borderline cases exist will not, however, render the statute unconstitutional. (See *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 427; *Stein v. Howlett* (1972), 52 Ill. 2d 570, 580.) Also, the fact that there may occur a misapplication of the statute will not render it invalid. (*Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 427.) The collector's concern that because of an absence of definitions in the amendment he will be subjected to penalty for inadvertently wrongfully applying the statute is unfounded.

Related to the above argument is the collector's

contention that the meaning of the language in section 20e, quoted above, that provides any owner of a "farm" shall be *eligible* for farm value assessment is unclear. It is argued that the amendment fails to provide a mechanism by which its benefits may be obtained. The collector points out that, in order to realize the benefits of other statutes providing for special tax treatment (Ill. Rev. Stat. 1977, ch. 120, pars. 500, 501a—1, 501b—1, 501d—1, 501g—1), some positive action must be taken by the property owner. Under these other statutory provisions, the exceptions to the usual procedures do not automatically apply. In section 20e of the Revenue Act of 1939, however, it is simply provided that the farm owner shall be "eligible" for a farm value assessment. It is argued that the section does not provide for an automatic application of farm-value assessment and that there is no direction to the collector as to when and under what circumstances a farm value assessment is to be applied. The collector contends that the amendment is incomplete and invalid. We think that the reading of the Revenue Act of 1939 as amended by Public Act 80—247 makes clear the legislative intent that the assessment procedure provided by the amendment is to be automatically applied to farmland, in the absence of some action taken which brings into play other sections of the Revenue Act of 1939. Since there is no provision for granting a farm-value assessment upon application, the provisions of the amendment would be meaningless if they were not to apply automatically. We must assume that the legislature, when it adopted Public Act 80—247, intended to enact an assessment procedure capable of being used. Although the statute could be more clearly drawn, the intent of the legislature is obvious. In *Hamer v. Kirk* (1976), 65 Ill. 2d 211, 218, this court declined to hold a revenue statute unconstitutionally vague, stating:

"Although we agree section 146 is scarcely a model

of statutory draftsmanship, its intent and operation are discernible."

This court has held that doubt and uncertainty as to the constitutionality of an act are, where possible, to be resolved in favor of its validity. (*People ex rel. Dolan v. Dusher* (1952), 411 Ill. 535, 540; *People v. Robinson* (1939), 372 Ill. 503, 505.) We find, as this court did in *Hamer v. Kirk,* that the intent and operation of Public Act 80—247 are discernible and hold that, under section 20e of the Revenue Act of 1939, an owner of a farm shall be automatically eligible for a farm-value assessment and the assessment of the farm shall be made in accordance with the provisions of Public Act 80—247.

In 1979 the General Assembly adopted Public Act 81—774, which amended section 20e, changing the language questioned by the collector. The words "any owner" and "eligible for farm value assessment on such farm real property" have been deleted. The section now reads, "The equalized assessed value of a 'farm' *** shall be determined pursuant to this Section." (Ill. Rev. Stat. 1979, ch. 120, par. 501e.) There is now no question but that the assessment procedures of section 20e apply automatically. A material change in a statute made by an amendatory act is presumed to change the original statute. (1A Sutherland, Statutes and Statutory Construction sec. 22.30, at 179 (1972); *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 107.) However, the circumstances surrounding the enactment of an amendment must be considered. If they indicate that the legislature intended to interpret the original act, the presumption of change will be rebutted. An amendment of an unambiguous statute indicates a purpose to change the law, while no such purpose is indicated by the mere fact of an amendment of an ambiguous provision. (1A Sutherland, Statutes and Statutory Construction sec. 22.30, at 179 (1972).) This court has held that a subsequent amendment is an appropriate source of

discerning legislative intent. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543; *People v. Scott* (1974), 57 Ill. 2d 353, 358.) The amendment to section 20e by Public Act 81—774 creates no new right and does not purport in any way to change the application of section 20e. It is clear that the purpose of the amendment was to clarify the ambiguity which the collector contended existed as to whether or not the assessment procedures applied automatically to farm real estate.

The collector poses numerous hypothetical situations which he contends demonstrate the lack of guidance to an assessment officer in assessing farm dwellings, the land on which farm dwellings are located, and farm improvements. The General Assembly has prescribed enough affirmative tests as to what is a farm that a person of reasonable intelligence can carry out his duties of assessing farms and the improvements located thereon. Section 1(25) provides that improvements shall be assessed as a part of the farm when they contribute to the operation of the farm. Obviously, if the buildings are not being used in connection with the farm but are being used for some other operation, such as a warehouse or a gift shop, they should not be assessed as a part of the farm. This does not mean that these buildings would not be assessed at all, as the collector suggests, but simply means they would not be assessed as farm property. This section does not prohibit these buildings from being assessed as nonfarm property. There may be occasional instances where it will be difficult to determine whether a building should be assessed as a part of the farm, or as nonfarm property. This fact, however, does not render the Act invalid as being vague and uncertain, or for failing to give adequate guidance to those who must administer the Act. (*City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334.) These situations can be resolved through the established administrative and judicial procedures for determining questioned or

disputed assessment issues.

The collector also finds uncertainty in the provisions for assessing farm dwellings. Section 1(25) provides:

"The parcels of real property on which farm dwellings are immediately situated shall be assessed as a part of the farm but valued pursuant to the provisions of subsection (24) of Section 1 of this Act." (Ill. Rev. Stat. 1977, ch. 120, par. 482(25).)

The collector contends that this provision is confusing and gives no guidance for determining what constitutes the parcel of real estate on which the farm dwelling is immediately situated. We believe that common sense and the above-referred-to procedures provided for resolving assessment disputes will dissipate the fog of uncertainty.

For the above reasons we do not agree with the collector's contention that the provisions of Public Act 80—247 are so vague and indefinite that men of ordinary intelligence must guess at their meaning and differ in their application and constitute a denial of due process to those charged with their implementation.

The collector next advances several agruments concerning the application of equalizing factors or multipliers to farmland assessed under section 20e. Although part of the argument relates to his previous contention concerning vague and indefinite provisions, the arguments can be answered as a whole by the general statement that farm property assessed under section 20e is, with the exception of farm dwellings, not subject to the traditional assessment equalizing procedures. Section 108a of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 589.1) provides for equalizing assessments within the county by the board of review. That section excludes property assessed under section 20e in the determination by the board of review of the percentage relationship in the various taxing districts between the valuations of locally assessed property and the estimated 33 1/3% of

the fair cash value of such property. After this percentage relationship is determined for each assessing district, this same section of the Act exempts the application of the ratio thus determined to property assessed in accordance with section 20e. Finally, in providing for the equalizing of assessments throughout the State by the Department, property assessed under section 20e is excluded in determining the multiplier to be applied to the property in each county. (Ill. Rev. Stat. 1977, ch. 120, par. 627.) In equalizing the assessed value of property in a county by the application of the multiplier as determined by the Department, property assessed under section 20e is again specifically exempt. (Ill. Rev. Stat. 1977, ch. 120, pars. 627, 629a.) Thus, neither the equalizing factor determined by the board of review to equalize assessments within the county, nor the equalizing factor determined by the Department for the broader equalizing of assessments throughout the State, is to be applied to property assessed under section 20e. As noted below, the purpose of applying the equalizing factors is to achieve an assessed value of 33 1/3% of the cash value of the property, whereas section 20e is designed to produce a lower assessed value related to the productivity of the farmland.

Nor do we see any infirmity in the failure of section 20e to provide for a method of computing an equalizing factor or multiplier for the purpose of equalizing assessed valuations within a county for assessments of farmland of lesser value than the best or highest grade in the county. Although the board of review has no authority to apply equalizing multipliers determined as provided in section 108a of the Revenue Act of 1939 to land assessed as farmland under section 20e, it has the authority to increase or decrease assessments under section 108 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 589). Section 20e provides that the assessments of farmland of lesser value shall be made by local assessing

officials and not solely by the local assessors. Thus all of the local assessing officials, including the assessor, the supervisor of assessments, and the board of review, may be involved in fixing this assessed value. By exercising its authority under section 108 of the Revenue Act of 1939, the board of review can assure a degree of uniformity of assessment among the various grades of farmland assessed under section 20e according to its productivity without applying any percentage multiplier to an entire assessment district as it does under section 108a.

The question has been raised as to whether or not the equalizing ratio or multiplier of the board of review and of the Department are to be applied to improvements located on the farm. As to improvements other than farm dwellings, section 1(25) of the Revenue Act of 1939 provides that they are to be assessed as a part of the farm and shall be valued upon their current use and their respective contribution to the productivity of the farm. Since the object of applying the equalizing factor is to secure an assessed value of 33 1/3% of the fair cash value of the property (Ill. Rev. Stat. 1977, ch. 120, pars. 589.1, 627), the multiplier should not be applied to these improvements. The contribution of these improvements to the productivity of the farm may have no relation to their fair cash value or 33 1/3% of their fair cash value. A different standard from fair cash value is used in fixing the assessed value of these improvements. It is therefore not appropriate to apply a multiplier that is designed to arrive at a uniform assessed value of 33 1/3% of the fair cash value.

The intent of the legislature as manifested in section 20e and section 1(25) of the Revenue Act of 1939 is different, however, as to farm dwellings. Section 20e speaks only of the assessment of farmland and refers to section 1 of the Act as to the meaning of the word "farm." In section 1(25), as noted above, it is provided that farm

improvements other than dwellings are to be valued upon their current use and contribution to the productivity of the farm. However, section 1(25) also provides:

"The parcels of real property on which farm dwellings are immediately situated shall be assessed as a part of the farm but valued pursuant to the provisions of subsection (24) of Section 1 of this Act." (Ill. Rev. Stat. 1977, ch. 120, par. 482(25).)

There is no specific reference in section 1(25) to the assessment of farm dwellings but only to the parcels of real property upon which farm dwellings are immediately situated. There is no indication that farm dwellings, which are specifically excepted from being assessed as other improvements on the farm, should be assessed separately from the real property on which they are located. It must therefore be assumed that farm dwellings are to be valued together with the real property on which they are situated. Subsection (25) provides that this value is to be pursuant to the provisions of subsection (24) of section 1, which provides:

"The term '33 1/3%' means 33 1/3% of the actual value of real and personal property, as determined by the Department's assessment to sales ratio studies for the 3 most recent years preceding the assessment year ***." (Ill. Rev. Stat. 1977, ch. 120, par. 482(24).)

This section does not provide a method for placing a value on real property. It instead is a definition of the term "33 1/3%" and specifies how it is to be determined. However, the reference to subsection (24) indicates that farm dwellings are to be valued differently from the method used in valuing farmland and other improvements on the farm. The reference to subsection (24) must be viewed as an expression of legislative intent that farm dwellings be valued in the same manner as other property, that is, at 33 1/3% of their fair cash value. Such being the case, the equalizing factor of the board of review and the Department would be applicable to the assessed value of farm dwellings.

Admittedly, the provision for assessing farm dwellings found in section 1(25) is not clear and the intent of the legislature can be ascertained only through statutory construction. However, as noted earlier in this opinion, on September 16, 1979, Public Act 81—774 was approved. In addition to the change previously noted, Public Act 81—774 also amended section 1(25) of the Revenue Act of 1939. The provision of subsection (25) relating to the assessment of farm dwellings now reads:

"The dwellings and parcels of real property on which farm dwellings are immediately situated shall be assessed as a part of the farm." (Ill. Rev. Stat. 1979, ch. 120, par. 482(25).)

The amendment thus specifically provides that dwellings be assessed, and the reference to subsection (24) of section 1 is omitted. Public Act 81—774 also adds section 20g to the Revenue Act of 1939, which provides:

"Each farm dwelling and appurtenant structures and the tract upon which the dwelling and appurtenant structures are immediately situated shall be assessed by the local assessing officials at 33 1/3% of its fair cash value. Such assessment shall be subject to the equalization factor determined by the Department in accordance with Sections 146 through 151a of this Act." (Ill. Rev. Stat. 1979, ch. 120, par. 501g.)

Section 20g makes it clear that farm dwellings and appurtenant structures and the land on which they are immediately situated are to be assessed at 33 1/3% of their fair cash value and the equalizing factors of normal assessment procedure are to be applied. This amendment clarifies the ambiguity that existed in section 1(25) of the Revenue Act of 1939 as to the assessment of farm dwellings. It is appropriate to consider this subsequent amendment in ascertaining the meaning of the ambiguous provisions of section 1(25) of the Revenue Act of 1939. *People v. Bratcher* (1976), 63 Ill. 2d 534, 543; *People v. Scott* (1974), 57 Ill. 2d 353, 358.

In summary, we hold that the constitutional challenges

of the collector to Public Act 80–247 are without merit. We hold that the equalizing factors of the board of review and of the Department do not apply in fixing the assessed value of farmland or improvements thereon other than farm dwellings. As to farm dwellings and their appurtenances and the real property on which they are immediately situated, we hold that these are to be valued at 33 1/3% of their fair cash value and that the equalizing factors of the board of review and of the Department are to be applied thereto.

The judgment of the circuit court of Peoria County denying the collector's motions to strike and to dismiss the objections filed to the application for judgment is affirmed except insofar as the denial of these motions relates to the assessment of farm dwellings, their appurtenances, and the real property on which they are immediately situated, and the cause is remanded to the circuit court of Peoria County for further proceedings.

*Affirmed in part and*
*reversed in part and*
*remanded.*