*In re* APPLICATION OF CLARK COUNTY COLLECTOR—(Board of Review for Clark County, Petitioner-Appellee, *v.* Glen Applegate *et al.*, Objectors—(Virgil Arney *et al.*, Objectors-Appellants)).

Fourth District   No. 4—82—0783

Opinion filed July 14, 1983.

William J. Warmoth, of Brainard, Bower & Kramer, of Charleston, for appellants.

David W. Lewis, State's Attorney, of Marshall (Robert J. Biderman and Michael W. Hogan, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.

Danny J. Leifel, of Illinois Agricultural Association, of Bloomington, for *amicus curiae.*

JUSTICE GREEN delivered the opinion of the court:

This case arises from the proceedings of the Board of Review of Clark County (Board) on October 9, 1981, when it met, without notice, and raised by 8% the existing assessments of farm real estate owned by objectors Glen Applegate *et al.* Subsequently, after paying 8% of the taxes levied on those properties under protest, objectors filed objections in the circuit court of that county in response to the County Collector of Clark County's application for judgment for delin-

quent taxes for the revenue year 1980. The Collector filed a motion for summary judgment contending the objectors had failed to exhaust their administrative remedies. The objectors filed a cross-motion for summary judgment maintaining that the Board acted improperly in raising the assessment and that 8% of the taxes levied against the farm properties were, accordingly, erroneously levied. The trial court allowed the Collector's motion, denied that of the objectors, and entered judgment for the Collector on October 26, 1982.

Objectors Virgil Arney *et al.*, have appealed. We have granted leave to the Illinois Agricultural Association (IAA) to file a brief *amicus curiae*. The parties agree that the properties in question all qualified as being a "farm" within the meaning of section 1(25) of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1979, ch. 120, par. 482(25)) and subject to assessment under section 20e of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 501e).

At all times pertinent, section 20e essentially provided that the farm value formula for arriving at the value of the best grade of farmland within the county should be determined by the Department of Local Government Affairs (whose duties have been transferred to the Department of Revenue by executive order (see Executive Order No. 3 (1979) preceding Ill. Rev. Stat. 1981, ch. 127, par. 1)), using the value per acre of agricultural products sold, the average value per acre of principal crops for the most recent three years, plus 10% of the average sale price per acre for the same three-year period. This section further provided that farmland of lesser value than that classified at the highest or best grade within the county should be valued for assessment purposes by local assessment officials on the basis of its productivity. See *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 265-66, 408 N.E.2d 204, 206.

Objectors assert that the increase in the assessment by 8% constituted the imposition of a multiplier or equalization factor in violation of sections 20e and 108a of the Act (Ill. Rev. Stat. 1979, ch. 120, pars. 501e, 589.1) and article IX, section 4 of the Illinois Constitution of 1970, thus, amounting to constructive fraud. They maintain that the exhaustion of remedies doctrine should not be applicable here because of their lack of notice of the Board's actions. The IAA urges that exhaustion of administrative remedies should not be required under the circumstances here, where an objection is made to an allegedly illegal imposition of an equalizing factor or multiplier.

We share the concerns of the objectors and the IAA as to the problems that result from applying the exhaustion-of-remedies rule to the situation presented. In passing on this question, we need not rule

upon the allegations by the objectors that the raising of the assessments constituted an illegal application of an equalizer, constituting constructive fraud. Rather, we deem the confusing nature of the applicable provisions of the Revenue Code and the procedures adopted by the Board to require that the objectors be permitted to prosecute objections to the Collector's application for judgment.

In *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737, the supreme court overruled the doctrine set forth in *Owens-Illinois Glass Co. v. McKibbin* (1943), 385 Ill. 245, 52 N.E.2d 177, whereby a taxpayer was permitted to attack the imposition of illegal, unauthorized or invalid taxes by proceeding in court without exhausting administrative remedies under the Revenue Code. Then, in *People ex rel. Boylan v. Illinois Central Gulf R.R. Co.* (1978), 72 Ill. 2d 387, 381 N.E.2d 276, that court held that, without exhausting administrative remedies, a railroad company could pay its property taxes under protest and object to the collector's application for judgment on the grounds that the assessment was not properly equalized by the department under section 80 of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 561). The court adhered to the rule of *People ex rel. Cain v. Illinois Central R.R. Co.* (1965), 33 Ill. 2d 232, 210 N.E.2d 516, and prior cases in which a distinction was recognized between (1) objections to original assessments which required the expertise of the department making administrative procedures necessary, and (2) objections to the application of an equalizing factor which was a mechanical procedure. The court also noted that the railroad had a valid concern about the adequacy of notice and time provisions which would be applicable by statute if administrative proceedings had to be exhausted.

In *People v. Jennings* (1954), 3 Ill. 2d 125, 119 N.E.2d 781, the failure of assessment officers to give proper notice of assessments of personal property was held to excuse objectors in court proceedings from the exhaustion of the administrative remedies requirement. (See also *In re Application of County Treasurer* (1977), 53 Ill. App. 3d 760, 368 N.E.2d 1127.) A similar failure may have occurred here. However, even if statutorily required notice was given, the procedure used in the context of the confusing legislation involved requires, in fairness, that objectors be allowed to proceed by objecting to the Collector's application. *Boylan.*

The record before the court at the time of the hearing on the motion for summary judgment was substantially undisputed as to relevant events. On June 25, 1981, the Department of Revenue of the State of Illinois (Department) ordered the Board to reconvene "in ex-

traordinary session for the purpose of further revising, correcting and equalizing the assessment of farm property." The Board then held the October 9, 1981, meeting where the assessments were increased by 8% and caused the following notice to be published in various county papers on October 15, and October 21, 1981:

"FARM TAX REASSESSMENT

Take note that for the purpose of reviewing and correcting reassessments of farm property in Clark County, Illinois, the Clark County Board of Review shall reconvene in extraordinary session on the 23rd day of October, 1981, at 10 a.m. to 11 a.m. at the Clark County Courthouse, Marshall, Illinois, pursuant to Chapter 120, Section 623, of the Illinois Revised Statutes. At said time the Board of Review shall review, correct, return and certify such reassessment as ordered by the Illinois Department of Revenue.

Earl Kile, Clerk of Board of Review."

None of the objectors appeared at the October 23 meeting and no correction or change was made to the assessments established at the October 9 meeting. The Board then certified and returned the assessments as increased. Taxes for the revenue year 1980 were then levied against objectors' properties.

Section 140.02 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 621.02) was in force at all pertinent times. It directs the Department to review the assessments made in each county under section 20e and if the Department finds that the assessments are not being made according to the statutory directive, the Department may, in its discretion, order a reassessment *or* direct the Board of Review to reconvene "for the purpose of correcting assessments." This section would appear to be the provision under which the Department intended to proceed. Notably, the Department's order said nothing about a reassessment. Rather, it directed the Board to revise, correct and equalize.

Even if the Board had merely corrected the assessments, as apparently intended, it is unclear what the requirements for proper notice would have been. No provision of the Code states directly that it is applicable to board of review procedures under section 140.02. In *O'Connor*, the supreme court held that section 20e property was not subject to equalization by boards of review under section 108a of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 589.1), but stated that such boards have "authority to increase or decrease assessments under section 108 of the [Act]." (81 Ill. 2d 260, 274, 408 N.E.2d 204, 210.) Thus, the provisions of section 108 of the Act (Ill. Rev. Stat. 1981, ch.

120, par. 589) would appear to be the appropriate section to follow if a board of review is merely correcting an assessment.

Subsections (4) and (5) of section 108 concern the power of boards of review to make changes in the assessed valuations of property. Subsection (4) states that "no assessment shall be increased until the person or corporation to be affected shall have been notified, and given an opportunity to be heard" except under circumstances not pertinent here. Subsection (5) permits boards of review to increase assessments of any class of property, but only after the owners of the property in question have been given 20 days notice by publication "of such proposed increase." The notice given here neither notified any individual objector that his, hers or its assessment had been changed, nor did it give 20 days notice to the class of owners of farm property of the proposed increase.

Confusion is created by section 140 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 621), which appears under a heading called "RE-ASSESSMENTS." Interspersed in that section with the discussion of reassessments is the following statement:

"The Department may order at any time and from time to time the board of review of any county not having an elective board of assessors and an elective board of review *to convene in extraordinary session for the purpose of further revising, correcting and equalizing the assessment of property within such county* or any assessment district thereof." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 120, par. 621.)

The term "revising, correcting and equalizing" are the exact words of the Department's order to the Board. Whether this provision is applicable to section 20e property is questionable because that type of property is not subject to equalization under section 108a. However, because the Department's order contained the exact language of the section, the Board may well have concluded that the Department was to make and review a reassessment under the provisions of section 140.

The Department is authorized by section 140 to order reassessments by "local assessment officers," a term which includes boards of review. (Ill. Rev. Stat. 1979, ch. 120, par. 482(4).) The persons making the reassessment are directed to give notice by publication that the reassessment has been made and of the date of any review of the reassessment. The publication must be at least five days before the review. That notice was given here but no notice was given before the reassessment was made. When notice is required before an increase in assessments is made, notice after the increase has been made has

been held to be insufficient. *People ex rel. Bracher v. Vail* (1920), 296 Ill. 61, 129 N.E. 494.

Section 141 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 622) states that "reassessments shall be made in the same manner and subject to the same laws and rules as an original assessment." No direct statement is made as to the notice required to be given. As we have noted, section 108(4) requires boards of review to notify persons and entities affected before any assessment can be increased and requires 20 days' notice by publication before the assessments of any class of property can be increased. Section 109 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 590) requires boards of review to publish a list of changes made in assessments within 30 days after its adjournment. If these provisions are the notice requirements of original assessments incorporated by analogy in section 141, no such notice was given to objectors.

Section 46 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 527) provides a procedure which might have been a logical one to have followed had the Department ordered a reassessment. It states that in counties of less than 1,000,000 in population, the supervisor of assessments, the board of assessors (not applicable here) or any township assessor may revise and correct assessments as shall appear just. Such a revision or assessment would be one by "local assessment officers" as required by section 140. Any change in assessment under section 46 requires the giving of notice in conformity with section 103 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 584). Section 103 provides for notice by mailing and publication. The notice by mailing required there would have given objectors here fair notice of the change in their assessments.

Section 142 of the Act (Ill. Rev. Stat. 1981, ch. 120, par. 623), under which the Board decided to proceed in revising the assessment it had made, does provide for boards of review to meet to correct and review assessments "in the same manner and subject to the same laws and rules as an original assessment." It requires a one-week notice by publication of such meeting. The notice appears to have complied with that section. However, the notice did not advise any particular property owner that the assessment of his properties had been changed.

■ We recognize the difficulties facing both the Department and the Board as well as other officials in working with the uncertainties of the provisions we have discussed. However, from the standpoint of the objectors, none of them ever received any notice that their assessments had been changed in any way. The only way that most of them

could have found out about the change in their assessment would have been to inspect the appropriate records in the short time between the published notices and the meeting on October 23 and then they would have had to prepare to object at that meeting. The published notice did not state what assessments had been changed. As indicated in *Boylan*, fundamental fairness prohibits application of the exhaustion doctrine to the objectors. The summary judgment in favor of the Collector must be reversed.

Reviewing courts are most reluctant to reverse an order of a trial court denying a motion for summary judgment. We will not do so here. The assessments of the properties in question were not subject to an equalization imposed by the Board under section 108a (*O'Connor*). However, as stated in *O'Connor*:

> "By exercising its authority under section 108 of the Revenue Act of 1939, the board of review can assure a degree of uniformity of assessment among the various grades of farmland assessed under section 20e according to its productivity without applying any percentage multiplier to an entire assessment district as it does under section 108a." (81 Ill. 2d 260, 275, 408 N.E.2d 204, 210.)

We are unable to determine with certainty from the record presented whether the Board exceeded its authority merely because the Board raised each assessment by the same percentage.

The portion of the order on appeal granting summary judgment to the Collector is reversed. The portion of the order denying summary judgment to the objectors is affirmed. The case is remanded to the circuit court of Clark County for further proceedings.

Reversed in part, affirmed in part, remanded.

TRAPP and MILLER, JJ., concur.