THE PEOPLE *ex rel.* ROGER GOETTEN, County Treasurer and *Ex Officio* Collector of Taxes of Jersey County, Plaintiff-Appellee, v. FRED HEITZIG *et al.*, Defendants-Appellants.

Fourth District   No. 4—88—0255

Opinion filed December 15, 1988.

McCULLOUGH, P.J., specially concurring.

Michael J. McDonald, of Schwarz, Self, White, Emons & McDonald, of Jerseyville, for appellants.

Richard J. Ringhausen, State's Attorney, of Jerseyville (Kenneth R. Boyle, Robert J. Biderman, and William P. Ryan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

Defendants all sought refund of real estate taxes paid under protest for the 1981 taxes, payable in 1982. All of the real estate involved is located in Jersey County. After the filing of tax objections and a hearing on the People's application for judgment, the circuit court of Jersey County entered judgment against all of the defendants, refusing to order any refunds. This appeal followed.

Defendants' objections relate to the constitutionality of Public Act 82—121 (1981 Ill. Laws 853), which was adopted by the 82nd General Assembly, being passed on June 29, 1981, approved and becoming effective on August 11, 1981. See Ill. Rev. Stat. 1981, ch. 120, par. 501e.

Public Act 82—121 provided a method of evaluating farmland based upon a complex formula, which included weighing soil productivity, gross income, production costs, and net income from land. The change from the prior fair cash value criteria was deemed necessary because of sale prices of farmland no longer maintaining a reasonable relationship to the net return.

It was recognized that the major overhaul of farmland assessment would necessitate substantial time, and a temporary treatment was provided by the following provisions of Public Act 82—121:

"For 1981 assessments only, the Department shall certify to each Board of Review or Board of Appeals a factor to be multiplied times the 1980 actual equalized assessed valuation of each parcel of farmland in the county. That factor shall be the quo-

tient of the proposed county average equalized assessed value per acre for the county weighted as prescribed in (3) above in this Section divided by the 1980 actual average equalized assessed valuation per acre of farmland in that county.

Any increase or decrease in the 1981 average per acre equalized assessed value of any farm, whether it consists of one or more than one tax parcel, shall not exceed $30 per acre. For 1982, 1983 and 1984 any increase in the per acre average equalized assessed value of any farm shall not exceed $30 per acre, plus any increase in the equalized assessed value per acre over the equalized assessed value per acre for the preceding year, as computed under (1) above in this Section.

Except as provided in this Section, the assessed valuation of farmland assessed pursuant to this Section shall not be subject to equalization by means of State equalization factors or State multipliers. Equalization factors applied by a chief county assessing official or a Board of Review pursuant to Sections 46a and 108 of this Act shall be applied to assessments of farmland only to achieve assessments as hereinabove required.

For the purposes of this Section, the Department may withhold non-farm multipliers to any county to assure proper implementation of this Section." (1981 Ill. Laws 853, 856.)

It was basically this provision which resulted in defendants' constitutional objection. Defendants paid their 1981 real estate taxes, payable in 1982, under protest, and further perfected their claim by filing a tax objection in the circuit court:

Public Act 82—121 provides for an elaborate method of contesting the productivity index used by any particular county in assessing farm real estate, but this procedure applies to June 1, 1982, and thereafter. No form of review was provided in relation to the 1981 assessments, which assessments are dictated by the above-stated portion of Public Act 82—121. Defendants contend that they were deprived of due process, that the 1981 portion of Public Act 82—121 is unconstitutional, and that they are entitled to a complete refund of the taxes paid under protest, together with interest at 5% per annum.

■ The due process requirement has been adequately described by our supreme court as follows:

"Due process requires that the property owner be given notice and an opportunity to be heard upon the valuation of his property at some point in the taxing process before his liability to pay the tax becomes conclusively established. A failure in this regard renders the tax void and uncollectible. (*Central of*

*Georgia Railway Co. v. Wright*, 207 U.S. 127.) On the other hand, the taxpayer is not entitled to notice and an opportunity to be heard at each stage, or at any particular stage, of the assessment procedure. So it has been held that if the taxpayer may be heard upon the question of valuation in an action brought to collect the tax, (*Weyhauser v. Minnesota*, 176 U.S. 550, 555,) or in an action to restrain collection of the tax, (*Security Trust and Safety Vault Co. v. Lexington*, 203 U.S. 323,) due process requirements have been satisfied." *Dietman v. Hunter* (1955), 5 Ill. 2d 486, 489, 126 N.E.2d 22, 23.

■ We note that the 1981 assessment of farmland was to be computed by a factor determined by the Department of Revenue (Department) multiplied times the 1980 actual equalized assessed valuation of each parcel of farmland. This portion of Public Act 82—121 dictates the Department's determination of the 1981 assessment *seemingly* to the exclusion of the local boards of review. The previous 1980 assessment, with equalization, was locked in, and the factor increasing or decreasing the assessment was controlled by the Department.

The duty of the General Assembly to provide uniformity in the valuation of real estate for taxation purposes has long been recognized. (*People ex rel. Ruchty v. Saad* (1952), 411 Ill. 390, 393, 104 N.E.2d 273, 276; Ill. Const. 1970, art. IX, §4.) Equalization formulas have been adopted and upheld. (*Saad*, 411 Ill. at 400, 104 N.E.2d at 279.) Consistent with this legislative obligation and authority, we find no objection to the method of determination for the 1981 farm acreage assessment provided by Public Act 82—121. Section 20e of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 501e) has been subject to amendments since Public Act 82—121, but the underlying concept of evaluation of farmland based on productivity has been retained. The increase or decrease in aggregate equalized assessed value of all farmland in a county was restricted to 10% for both 1984 and 1985. The $30-per-acre limitation, which is provided by Public Act 82—121, has not been retained.

As stated by the *Dietman* opinion, due process requires that a property owner be given the opportunity to be heard as to assessed valuation matters. Public Act 82—121 definitely provided for a different method of determining assessment values. The 1981 change of farmland assessed valuation required by Public Act 82—121 was to be made based on factors determined by the Department, not on decisions of the board of review. This legislative delegation appears within the authority to provide for equalization. "The manner of obtaining uniformity in assessed valuations is exclusively for the legisla-

ture to determine, and when that manner has been prescribed, courts do not grant relief unless assessments are actually fraudulent or so excessive as to amount to fraud." (*Saad*, 411 Ill. at 397, 104 N.E.2d at 277.) The local board of review lacked authority to make changes in the factors determined by the Department. This lack of authority is similar to the lack of authority of a board of review to change the equalization percentages, which the Department certifies to the county clerks under the provisions of sections 146 through 151 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, pars. 627 through 632).

We agree the absence of due process would result in a constitutional impairment. (See *Dietman*, 5 Ill. 2d at 489, 126 N.E.2d at 23.) Regardless of the lack of review provisions in Public Act 81—121, we do not feel compelled to guess what action would have been taken by the Board of Review of Jersey County or, subsequently, by the State Tax Appeal Board.

Defendants' complaints basically stem from changed assessments. The administrative procedure regulating assessment challenges requires a written complaint to the board of review. (Ill. Rev. Stat. 1981, ch. 120, par. 589(4).) Defendants' tax objections filed in the circuit court failed to note a written complaint, stating instead their contact with the supervisor of assessments resulted in being told there was nothing local assessing officers could do regarding the assessment changes. Such advice does not free taxpayers from compliance with the requirement of administrative procedure, including the filing of a written complaint. (*People ex rel. Brittan v. Outwater* (1935), 360 Ill. 621, 624, 196 N.E. 835, 837; *In re Application of County Treasurer* (1977), 53 Ill. App. 3d 760, 761, 368 N.E.2d 1127, 1128.) Defendants' objections were necessarily dismissed.

Affirmed.

GREEN, J., concurs.

PRESIDING JUSTICE McCULLOUGH, specially concurring:
The taxpayers alleged in their objections:

(1) They contacted the supervisor of assessments requesting a hearing regarding real estate taxes.

(2) The supervisor informed them that there was no relief at a local level and their only recourse was to file an appeal with the property tax appeal board.

(3) The failure of the local assessing officials to give the tax-

payers a hearing regarding the assessment violates due process.

(4) That section 20e (Ill. Rev. Stat. 1981, ch. 120, par. 501e) is unconstitutional.

(5) That the assessments against the taxpayers are invalid and void and unlawful as a result of the failure of the assessing officials in the department to properly consider the different makeup of each objector's real estate.

(6) That the factor certified by the Department of Revenue used improper data on soil types and acreage.

Essentially, there are three issues. Lack of hearing, improper application of section 20e and the constitutionality of section 20e.

As to the lack of hearing, the objectors did not properly pursue their right to a hearing. As stated in *People ex rel. Lovelace v. Heldebrandt* (1984), 128 Ill. App. 3d 359, 362, 470 N.E.2d 1109, 1112:

"The general rule in Illinois is that there is no right to judicial review of an allegedly excessive or fraudulent tax assessment unless the administrative remedy has been exhausted."

The objectors allege nothing more than that they contacted the supervisor of assessments of Jersey County. They not only failed to file a written complaint, they do not allege that they even followed the suggestion made by the supervisor of assessments, "their only recourse was to file an appeal with the Property Tax Appeal Board." It is not alleged there was any complaint in writing filed with the Board of Review or Property Tax Appeal Board. They cannot now complain.

As to the improper application of section 20e, the objectors allege only conclusions, presented no evidence, and cannot now complain.

The final assertion of unconstitutionality is equally without merit. The classification of farm property for assessment purposes has been upheld. (*Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74.) The issue, lack of due process, concerns taxpayers' right to a hearing as to the assessment. The Board of Review is prohibited from equalizing assessments made under section 20e. (Ill. Rev. Stat. 1981, ch. 120, par. 589.1.) It is not clear, however, that these objectors were prohibited from filing complaints pursuant to section 108 and the appeal process to the Property Tax Appeal Board, per sections 111.2a through 111.4. (Ill. Rev. Stat. 1981, ch. 120, pars. 589, 592.2a through 592.4.) Section 20e permits the Board of Review to follow the procedure of section 108 (Ill. Rev. Stat. 1981, ch. 120, par. 589) in the application "to assessments of farmland only to achieve assessments as hereinabove required." (Ill. Rev. Stat. 1981, ch. 120, par. 501e.) The taxpayers were not foreclosed, with respect to 1981 assessments, to file a complaint

with the Board of Review. In *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 266, 408 N.E.2d 204, 206, the supreme court stated:

"The Act should be liberally construed to achieve a discernible purpose. We must also be guided by the accepted principle that legislative enactments are presumed constitutional and that reasonable doubts concerning the validity of a statute must be resolved in its favor. [Citation.] In *Hoffmann v. Clark* this court upheld the legislature's classification of farm property for special treatment for assessment purposes."

*O'Connor* involved section 20e prior to the amendment which is the subject here. The supreme court stated:

"Although the *board of review* has no authority to apply equalizing multipliers determined as provided in section 108a of the Revenue Act of 1939 to land assessed as farmland under section 20e, it *has the authority to increase or decrease assessments under section 108 of the Revenue Act* of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 589). Section 20e provides that the assessments of farmland of lesser value shall be made by local assessing officials and not solely by the local assessors. Thus all of the local assessing officials, including the assessor, the supervisor of assessments, and the board of review, may be involved in fixing this assessed value. By exercising its authority under section 108 of the Revenue Act of 1939, the board of review can assure a degree of uniformity of assessment among the various grades of farmland assessed under section 20e according to its productivity without applying any percentage multiplier to an entire assessment district as it does under section 108a." (Emphasis added.) *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 274-75, 408 N.E.2d 204, 210.

Section 20e as it applies to 1981 assessment of real estate taxes is constitutional. The trial court was correct.