THE VILLAGE OF BUFFALO, Petitioner, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Respondents (Illinois Power Company, Intervenor).

Fourth District No. 4—88—0529

Opinion filed March 9, 1989.—Modified on denial of rehearing April 18, 1989.

William Herrmann and Nancy Gaitskill, both of Governor's Office of Consumer Services, of Chicago, and Roger D. Colton, of Boston, Massachusetts, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Ana C. Cusack and Kathleen Nolan, Special Assistant Attorneys General, of Chicago, of counsel), for respondents.

Owen E. MacBride, Edward J. Finn, and Heather F. Wood, all of Schiff, Hardin & Waite, of Chicago, for intervenor Illinois Power Company.

JUSTICE SPITZ delivered the opinion of the court:

In 1976, intervenor, Illinois Power Company (Illinois Power), Soyland Power Cooperative, Inc., and Western Illinois Power Cooperative, Inc. (Cooperatives), entered into the Clinton Power Station ownership participation agreement (OPA). The OPA, together with certain subsequent amendments thereto, provided, *inter alia*, that Illinois Power and the Cooperatives would jointly own and be jointly responsible for the construction and operating costs of the Clinton Power Station (Clinton). The OPA originally provided for the Cooperatives to own approximately 14% of Clinton. As subsequently amended, it provided that the Cooperatives' ownership share of Clinton would be 20%. Under the OPA, Illinois Power is responsible for the design, construction, licensing, testing, and operation of Clinton and pays all related direct costs to contractors and suppliers engaged on the project. The Cooperatives are billed periodically for their share of the cost and reimburse Illinois Power accordingly.

For many years, Illinois Power had provided bulk electric power to the Cooperatives at wholesale for resale to the Cooperative members. By 1983, Illinois Power and the Cooperatives began negotiating for Illinois Power to provide the Cooperatives with electric energy and power under a long-term agreement by which the prices to the Cooperatives would be similar to the cost the Cooperatives would incur if they owned their own generating facilities. Additionally, in 1983, the Cooperatives sought to limit their investment in the construction costs of Clinton. As a result of these negotiations, in March 1984, Illinois Power and the Cooperatives entered into a letter of intent which expressed the intent of the parties to reach certain definitive agreements relating to electrical service by Illinois Power to the Cooperatives and limiting the Cooperatives' direct investment in Clinton to $450 million.

On October 3, 1984, the Governor's Office of Consumer Services filed a verified petition on behalf of the Village of Buffalo (Village), requesting the Illinois Commerce Commission (Commission) to institute a proceeding to investigate and review the terms of the March 1984 letter of intent. On October 5, 1984, five agreements were executed by Illinois Power and the Cooperatives to finalize and implement the letter of intent. These agreements included: (1) a power coordination agreement; (2) amendment No. 6 to the OPA; (3) amendment No. 2 to the Clinton Station operating agreement; (4) a

loan agreement; and (5) a mutual release and satisfaction agreement. This appeal concerns only amendment No. 6. Under this amendment, the Cooperatives' investment in the direct cost of Clinton would be capped at $450 million and the parties' ownership shares in Clinton would be adjusted in accordance with the ratios of their respective investments in the direct costs to the total direct costs.

On December 5, 1984, the Commission granted the Village's petition and instituted a proceeding to investigate the aforementioned agreements. A number of prehearing conferences and hearings were held before a hearing examiner. One of the Village's assertions throughout the proceedings was that amendment No. 6 violated section 7—102(c) of the Public Utilities Act (Act) (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 7—102(c)), which prohibits a public utility from encumbering the whole or any part of its business or property without prior approval or consent of the Commission. It was the Village's position that amendment No. 6 was an unlawful encumbrance on the property or business of Illinois Power, which required prior Commission approval pursuant to section 7—102(c) of the Act. Illinois Power argued that the purpose of section 7—102(c) was to protect a public utility from disposing of property it needs to serve the public. Illinois Power asserted that amendment No. 6 did not provide for the disposal of utility property used to serve the public and did not require prior Commission approval.

In an order dated April 29, 1988, the Commission denied the Village's requested relief and dismissed the petition. The order stated:

> "The Commission *** does not accept the Village's position that Amendment No. 6 constitutes an encumbrance upon the business or property of [Illinois Power] undertaken without Commission approval in violation of Section 7—102(c) of the Act. *** While [Illinois Power] takes on additional obligations under Amendment No. 6 *** the assumption of these obligations does not constitute an encumbrance on [Illinois Power's] property."

The Commission concluded that amendment No. 6 did not require Commission approval under the Act, and therefore, was not subject to the Commission's jurisdiction. The Village's subsequent application for reconsideration was denied on June 15, 1988. On July 18, 1988, the Village filed a petition for review in this court. (107 Ill. 2d R. 335; Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—201(a).) On September 2, 1988, Illinois Power was granted leave to intervene.

The sole issue before the court is whether the Commission's interpretation of section 7—102(c), that the obligation created by amend-

ment No. 6 did not constitute an encumbrance, was correct.

Section 7—102 of the Act provides in pertinent part:

"Unless the consent and approval of the Commission is first obtained or unless such approval is waived by the Commission in accordance with the provisions of this Section:

\* \* \*

(c) No public utility may assign, transfer, lease, mortgage, sell (by option or otherwise), or otherwise dispose of or encumber the whole or any part of its franchises, licenses, permits, plant, equipment, business or other property \*\*\*." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 7—102.)

Specifically, the instant case involves the propriety of the Commission's interpretation of the word "encumber" in section 7—102(c) of the Act. (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 7—102(c).) A resolution of the issue presented requires an examination of the statute involved together with an application of the rules of statutory construction.

■ The primary rule of statutory interpretation and construction, to which all other canons and rules are subordinate, is to ascertain and effectuate the true intent and meaning of the legislature. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 73, 285 N.E.2d 129, 130.) In interpreting a statute, a court must give the legislative language its plain and ordinary meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.) If the language of the statute is plain, clear, and unambiguous, and if the legislative intent can be ascertained therefrom, it must prevail and will be given effect by the courts without resorting to other aids for construction. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.

■ However, the proper interpretation of a statute and determination of legislative intent cannot always be based upon its language alone. Where a statute is ambiguous and the legislative intent cannot be ascertained from the plain and ordinary meaning of its language, then the court is guided by the rules of statutory construction. (*Rigney v. Edgar* (1985), 135 Ill. App. 3d 893, 482 N.E.2d 367; *Trigg v. Sanders* (1987), 162 Ill. App. 3d 719, 515 N.E.2d 1367.) Generally, the interpretation of a statute must be grounded on the nature and object of the statute as well as the consequences which would result from construing it one way or another. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332.) Legislative intent may be ascertained from the reason and necessity for the act, the evils sought to be remedied, and the objects and purposes sought to be obtained. (*In re Marriage of Antonich* (1986), 148 Ill. App. 3d 575, 499 N.E.2d 654, *dismissed* (1987), 113 Ill. 2d 574, 505 N.E.2d 350.) Moreover, statu-

tory interpretations by administrative agencies express an informed source for ascertaining legislative intent. *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161.

It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the administrative body charged with the application and enforcement of the statute. (*Radio Relay Corp. v. Illinois Commerce Comm'n* (1977), 69 Ill. 2d 95, 370 N.E.2d 528; *Scott v. Edgar* (1987), 152 Ill. App. 3d 221, 505 N.E.2d 4.) A significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) The supreme court has recognized that while they are not binding on a court, "interpretations by administrative agencies express an informed source for ascertaining the legislative intent" (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 344-45, 348 N.E.2d 161, 165), and such interpretations should be and normally are persuasive (*Mississippi River Fuel Corp. v. Illinois Commerce Comm'n* (1953), 1 Ill. 2d 509, 116 N.E.2d 394; *Milkowski v. Department of Labor* (1980), 82 Ill. App. 3d 220, 402 N.E.2d 646). This deference to administrative constructions is often applied in the case of factual situations where constructions have been consistently adhered to for a long period of time. (*Radio Relay Corp.*, 69 Ill. 2d 95, 370 N.E.2d 528.) Yet, while lack of consistency or duration may affect the weight a court will give to an administrative interpretation in a particular case, consistency and duration are not requisites for applying the rule. (See *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300 (and cases cited therein).) It is against this backdrop that the Village's contentions will be analyzed.

In support of its position, the Village first argues that the Commission erroneously limited section 7–102 to a proscription only of encumbrances on the property of a utility. The Village asserts that the Commission considered only whether the encumbrance existed on the *property* of Illinois Power, but that the Act exceeds such limitations to proscribe encumbrances on the *business* of Illinois Power. The Village further asserts that the term "encumbrance" in section 7–102(c) encompasses not only "liens" but also "obligations" such as the $230 million obligation in the instant case. The Village cites to *Monti v. Tangora* (1981), 99 Ill. App. 3d 575, 425 N.E.2d 597, for the proposition that the word "encumbrance" not only includes liens but is also any right in a third party which diminishes the value of a utility as a

business. The Village maintains that the $230 million obligation here diminishes the value of the business of Illinois Power and creates a right in a third party to be paid in a full and timely fashion. The Village concludes that the $230 million obligation, while not creating a lien on Illinois Power property, is an encumbrance on the business of Illinois Power and, therefore, Illinois Power was required under section 7—102 of the Act to seek prior Commission approval.

These contentions are unpersuasive. First, the Village's assertion that the Commission considered only whether an encumbrance existed on the *property* of Illinois Power mischaracterizes the Commission's ruling. The Commission's order actually stated:

> "The Commission likewise does not accept the Village's position that Amendment No. 6 constitutes an encumbrance upon the *business or property* of [Illinois Power] undertaken without Commission approval in violation of section 7—102(c) of the Act." (Emphasis added.)

This indicates that the Commission did not limit the application of section 7—102(c) to only encumbrances on the property of Illinois Power, but considered and rejected whether amendment No. 6 was an encumbrance on Illinois Power's business or property. Next, the Village has misstated the language from *Monti* by deleting the word "land." This court in *Monti* defined an encumbrance as "any right to, or interest in, *land* which may subsist in a third party to the diminution of the value of the estate, but consistent with the passing of the fee by conveyance." (Emphasis added.) (*Monti v. Tangora* (1981), 99 Ill. App. 3d 575, 580, 425 N.E.2d 597, 602.) The *Monti* court's definition of "encumbrance" was based upon and is identical to the Supreme Court's definition of "encumbrance" in *Brown v. Lober* (1979), 75 Ill. 2d 547, 389 N.E.2d 1188. After defining the term, the *Monti* court reasoned:

> "Although the word 'encumbrance' is said to have no technical, legal meaning, the covenant is construed broadly to include not merely liens such as mortgages, judgment liens, taxes, or others to which the land may be subjected to sale for their payment, but also attachments, leases, inchoate dower rights, water rights, easements, restrictions on use, or any right in a third party which diminishes the value or limits the use of the land granted. 3 Am. Law of Prop. §12.128 (1952)." (*Monti*, 99 Ill. App. 3d at 580-81, 425 N.E.2d at 602.)

The foregoing definition and discussion support the Commission's interpretation. The obligation in this case was not a claim against, right to, or interest in the land or property of Illinois Power, nor could it be

characterized as one of the types of encumbrances listed by this court in *Monti*. Furthermore, the holding in *Monti*, that the existence of a building code violation which created a future obligation to pay money was not an encumbrance, does not support the Village's position.

 The Village's second contention is that the Commission erred in not finding that the term "encumbrance" included "to load with debt" or "to burden with financial obligations." The Village cites to *Fuller v. Dillon* (1964), 220 Ga. 36, 136 S.E.2d 733, and *Underwood v. Fairbanks, Morse & Co.* (1933), 205 Ind. 316, 185 N.E. 118, to argue that the term "encumbrance" means, among other things, to load with debt or burden with financial obligations. The Village also relies upon the fourth edition of Black's Law Dictionary, asserting that it defines "incumbrance" as "[a] claim, lien, charge or liability." (Black's Law Dictionary 908 (4th ed. 1957).) The Village concludes that these definitions demonstrate that the obligation in the case at bar constitutes an encumbrance.

We are unpersuaded by these contentions. Initially, we point out that the Village's reliance upon *Fuller* and *Underwood* is misplaced. The court in *Fuller* held that a court order requiring payment from a particular trust fund constituted an encumbrance on that fund. The *Fuller* court reasoned: "The word 'encumbrance' has been defined as follows: A burden on the title or a charge on property; to load with debts; a claim or lien upon an estate which may diminish its value, a lien created by a judgment." (*Fuller*, 220 Ga. at 39, 136 S.E.2d at 737.) The court concluded that the lien created by the court order in that case was an encumbrance. In the instant case, no court order or lien is involved. Next, in *Underwood*, the court held that the issuance by an Indiana municipality of "pledge orders" whose payment was to be from identified revenue did not create an "encumbrance" under a statute similar to the one at issue in the instant case. In so holding, the court stated:

> "[I]t is insisted that [defendant] has encumbered [its plant] by pledging net revenue of the present municipal plant to the payment of the pledge orders. We cannot so construe the word encumber. The word 'encumber' ordinarily means 'to charge, or burden with financial obligations or mortgages.' There is no question of a mortgage involved and the pledge orders, when issued, will not be a lien on the plant ***." (*Underwood*, 205 Ind. at 334, 185 N.E. at 124.)

Thus, the court determined that as there was no lien or mortgage, there was likewise no encumbrance. Hence, these cases do not support the Village's position.

Furthermore, the most current edition of Black's Law Dictionary defines an encumbrance, in full, as follows: "Any right to, or interest in, land which may subsist in another to diminution of its value, but consistent with the passing of the fee. [Citation.] A claim, lien, charge, or liability attached to and binding real property; *e.g.*, a mortgage; judgment lien; mechanics' lien; lease; security interest; easement or right of way; accrued and unpaid taxes." (Black's Law Dictionary 473 (5th ed. 1979).) This definition relates to real property or real estate and that there is nothing in the definition to indicate that the intangible aspect of a company, such as its "business," "value" or "goodwill," could be encumbered. The Village quoted only a brief portion of the definition of "encumbrance" in the fourth edition of Black's Law Dictionary. A reading of the entire definition in the current (fifth) edition fails to support the Village's argument.

In sum, the various definitions of "encumbrance" by this court in *Monti*, the supreme court in *Brown,* and that from Black's Law Dictionary demonstrate that an encumbrance is an interest in or right to property, not a contingent, unsecured obligation to pay money. In particular, the *Monti* court characterized encumbrances as liens creating security interests in land, including both those for which land may be subjected to sale for their payment as well as other restrictions which limit the use of the land granted, but do not subject that land to immediate sale for their payment. Each of those encumbrances is an interest in property adverse to the fee owner of the property. The *Monti* definition of encumbrance does not include a mere unsecured, contingent obligation to pay money, such as was created here by amendment No. 6. Furthermore, a reading of section 7—102(c) reveals that each of the actions there listed, requiring prior Commission approval, involves the creation of an interest or right in the property of the utility in a third person. Amendment No. 6 created no interest in Illinois Power in favor of a third party. In view of the foregoing and because the Commission's interpretation is to be given substantial weight and deference, we will not disturb the Commission's decision.

Accordingly, the order of the Illinois Commerce Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.