619 N.E.2d 239 (1993)
249 Ill. App.3d 740
188 Ill.Dec. 875
DEPARTMENT OF CENTRAL MANAGEMENT SERVICES (The Department of Children and Family Services), Petitioner,
v.
ILLINOIS STATE LABOR RELATIONS BOARD, Respondent and CrossRespondent, (The American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO, Respondent and Cross-Petitioner).
No. 4-92-0702.
Appellate Court of Illinois, Fourth District.
Argued May 19, 1993.
Decided August 26, 1993.
*240 Gene Vernon, Chief Labor Relations Counsel, Cent. Management Services, Springfield, Alan M. Levin, argued, Jill P. O'Brien, James R. Jenkins, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, for petitioner.
Roland W. Burris, Atty. Gen., Rosalyn B. Kaplan, Sol. Gen., Alison E. O'Hara, argued, Asst. Atty. Gen., Chicago, for respondent I.S.L.R.B.
*241 Jacob Pomeranz, argued, Cornfield & Feldman, Chicago, for respondent A.F.S.C.M.E.
Justice LYTTON delivered the opinion of the court:
This petition and cross-petition are before this court on administrative review of a decision and order entered by the Illinois State Labor Relations Board (Board) on July 16, 1992. (Illinois Department of Central Management Services (Department of Children & Family Services), 8 Pub. Employee Rep. (Ill.) par. 2037, No. RC-92-46 (Illinois State Labor Relations Board, July 16, 1992) (hereinafter 8 Pub. Employee Rep. (Ill.) par. 2037).) We must consider whether the Board erred in determining that certain employees of the State of Illinois, Department of Central Management Services (Department of Children and Family Services (DCFS) (employer)), were supervisors within the meaning of section 3(r) of the Illinois Public Labor Relations Act (Act) (Ill.Rev.Stat.1989, ch. 48, par. 1603(r)). After a complete review of the record and the parties' arguments, we affirm.

I. BACKGROUND
On October 15, 1991, the respondentcross-petitioner, American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (AFSCME), petitioned the Board to hold a secret ballot election among child welfare supervisors (CWS's) of DCFS. The petition sought to add approximately 200 CWS's to the existing statewide bargaining unit. Formal hearings on the petition were held over seven days in November and December 1991.
The hearing officer issued a recommended decision and order finding that the CWS's were supervisors within the meaning of section 3(r) of the Act and dismissed AFSCME's petition. Applying the Board's prior interpretation of section 3(r), he found State supervisors exempt from the statutory requirement of devoting a "preponderance" of time to supervisory activity. However, the hearing officer also noted the
First District Appellate Court's opinion in American Federation of State, County & Municipal Employees, Council 31 v. Chief Judge of the Circuit Court (1991), 209 Ill.App.3d 283, 154 Ill.Dec. 139, 568 N.E.2d 139, appeal denied (1991), 139 Ill.2d 593, 159 Ill.Dec. 104, 575 N.E.2d 911, holding State supervisors were not exempt from the preponderance requirement. Thus, he made additional findings that "downstate" CWS's met the preponderance requirement, while Cook County CWS's did not.
Both parties filed exceptions to the hearing officer's recommended decision and order. On July 16, 1992, the Board adopted the hearing officer's recommended decision, but modified it to reflect that it was bound by the first district's opinion in Chief Judge. Therefore, the Board concluded that the Cook County CWS's were not supervisors according to section 3(r) of the Act, because they did not spend a preponderance of their time engaged in supervision. On the other hand, the "downstate" CWS's were supervisors under the Act because they did spend a preponderance of their time exercising their supervisory authority. The Board ordered an election for the Cook County CWS's, and they elected AFSCME as their bargaining representative.

II. LEGISLATIVE HISTORY
The origin of section 3(r) of the Act can be traced to Executive Order No. 73-6, issued by then-Governor Daniel Walker. (1979 Ill.Laws 5155 (Executive Order 73-6, issued by Governor Walker Sept. 4, 1973).) This executive order granted collective-bargaining rights to most State of Illinois employees and established the Office of Collective Bargaining. Executive Order No. 73-6 was continued by then-Governor James R. Thompson until the effective date of the Act in 1984. (1984 Ill.Laws 4638 (Executive Order 84-5, issued by the Governor Aug. 20, 1984, revoking Executive Order 73-6 and all rules and regulations promulgated thereunder).) One of the rules promulgated pursuant to the executive order defined the term "supervisor." *242 (Rules and Regulations of the Director of Personnel for Public Employee Collective Bargaining § 1.16.) This definition is substantially the same as that contained in section 3(r) of the Act. However, section 3(r) adds the requirement that a supervisor must engage in supervisory activity a preponderance of the time, referred to as the "preponderance" requirement.
When the Senate presented Governor Thompson with the original Senate Bill 536 (83d Ill.Gen.Assem., Senate Bill 536, 1983 Sess.), he returned the bill unsigned with an amendatory veto message. (Final Legis. Synopsis and Dig. of 1983 Sess. of the 83d Ill. Gen. Assem., Senate Bill 536 (Sept. 23, 1983), at 327, 329.) The language contained in section 3(r) of the Act originally read, "[e]xcept with respect to police employment, the term `supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority." (83d Ill.Gen.Assem., Senate Bill 536, 1983 Sess.) The Governor recommended that the words "State supervisors notwithstanding" be added to the end of the sentence. The bill was amended by the legislature, and the language at issue was added. The bill was then passed by both the House and Senate and was signed into law by Governor Thompson (Pub.Act 83-1012, eff. July 1, 1984 (1983 Ill.Laws 6830)). See Illinois Department of Central Management Services, 1 Pub. Employee Rep. (Ill.) par. 2025, Nos. S-UC-4, S-UC-20 (both Board opinion and appended hearing officer's recommended decision discuss legislative history of this language).

III. DISCUSSION
Section 3(r) of the Act contains four prongs that are employed by the Board to determine whether an employee is a supervisor. The statute as enacted, in relevant part, provides as follows:
"`Supervisor' [(1)] is an employee whose principal work is substantially different from that of his subordinates and [(2)] who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effectively recommend such action, [(3)] if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. [(4)] Except with respect to police employment, the term `supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority State supervisors notwithstanding." (Emphasis added.) Ill.Rev.Stat.1989, ch. 48, par. 1603(r).
The "preponderance" requirement was first construed by the Board in Illinois Department of Central Management Services, 1 Pub. Employee Rep. (Ill.) par. 2025, Nos. S-UC-4, S-UC-20 (Illinois State Labor Relations Board, Oct. 23, 1985). The Board refused to employ the "preponderance" requirement against a State supervisor in Illinois Deparment of Central Management Services. It reasoned that the "State supervisors notwithstanding" language was added by an amendatory veto, and that a veto, by its very nature, must effect a change. The change, according to the Board, was to exempt State supervisors from the "preponderance" requirement. The Board also reasoned that a literal reading of the "preponderance" requirement with the clause "State supervisors notwithstanding" was less than completely clear. Instead of assigning the language at issue in section 3(r) of the Act its plain and ordinary meaning, the Board believed that under the common law rules of statutory construction, it was required to interpret the Act in a manner which would avoid rendering any word, clause or sentence meaningless or superfluous.
The Board also rejected the argument that comments made by the sponsor of the bill, then-Representative Alan J. Grieman, were an indication of the Governor's intent behind adding the "State supervisors notwithstanding" language. In essence, Grieman stated that there was a difference between supervisors in the private sector and in the public sector in that supervisors in the public sector are often given honorific titles without any real authority over *243 other employees' wages, hours and working conditions. (See Chief Judge, 209 Ill. App.3d at 288-89, 154 Ill.Dec. at 143, 568 N.E.2d at 143.) The Board reasoned that the comments were general statements concerning the recommended changes of the Governor. For the above reasons, the Board found that the clause "State supervisors notwithstanding" was added to exempt State supervisors from the "preponderance" requirement.
This court is guided by the primary rule of statutory interpretation, to which all other canons and rules are subordinate: to ascertain and effectuate the true meaning and intent of the legislature. (Village of Buffalo v. Illinois Commerce Comm'n (1989), 180 Ill.App.3d 591, 595, 129 Ill.Dec. 598, 600, 536 N.E.2d 438, 440.) It is fundamental that a court must give the legislative language at issue its plain and ordinary meaning. If the statutory language is plain, clear and unambiguous, and if a court can ascertain the intent from it, the language will be given effect by the court without resorting to other aids for construction. Buffalo, 180 Ill.App.3d at 595, 129 Ill.Dec. at 600-01, 536 N.E.2d at 440-41.
We agree with the first district's opinion in Chief Judge that the plain and ordinary meaning of the word "notwithstanding" is unambiguous, and clearly does not exempt State supervisors from the "preponderance" requirement. We also find that a literal reading of the statutory language at issue is that the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising such authority in spite of their status as State supervisors. Chief Judge, 209 Ill.App.3d at 289, 154 Ill.Dec. at 143, 568 N.E.2d at 143.
The argument of the employer and the Board that we should construe the plain and unambiguous language of the statute is without merit. Because we have assigned the "notwithstanding" clause its plain and unambiguous meaning, it is unnecessary to resort to any other rules of construction. Buffalo, 180 Ill.App.3d at 595, 129 Ill.Dec. at 601, 536 N.E.2d at 441.
The employer and the Board's interpretation of Governor Thompson's amendatory veto is misguided. The Governor's amendatory veto power was exercised pursuant to article IV, section 9(e), of the Illinois Constitution of 1970, where he is authorized to make "specific recommendations for change to the house in which it originated." (Ill. Const.1970, art. IV, § 9(e).) While the exact boundaries of the Governor's power under this section have not been totally defined, a Governor may not substitute a completely new bill (People ex rel. Klinger v. Howlett (1972), 50 Ill.2d 242, 249, 278 N.E.2d 84, 88), or change the fundamental purpose of the legislation. (Continental Illinois National Bank & Trust Co. v. Zagel (1979), 78 Ill.2d 387, 398, 36 Ill.Dec. 650, 655, 401 N.E.2d 491, 496.) The Governor's amendatory veto power may make changes that constitute minor enhancements which relate to clarity, fairness or the practical requirements of the legislation. People ex rel. City of Canton v. Crouch (1980), 79 Ill.2d 356, 376, 38 Ill.Dec. 154, 403 N.E.2d 242, 251.
When the Governor considers a bill, he is acting in a legislative capacity, and for that purpose, he is a part of the legislative department. (Williams v. Kerner (1963), 30 Ill.2d 11, 14, 195 N.E.2d 680, 682.) If the Governor exercises his amendatory veto powers and returns a bill to the house in which it originated with specific recommendations for change, the legislature must take additional action. The bill is "passed" when both houses of the legislature have voted to accept the Governor's recommendations for change. (Mulligan v. Joliet Regional Port District (1988), 123 Ill.2d 303, 316, 123 Ill.Dec. 489, 495-96, 527 N.E.2d 1264, 1270-71.) Any recommended changes by the Governor that are accepted by the legislature must be interpreted as being part of the legislature's intent behind the statute, so long as the changes do not disturb the basic purpose of the legislation. The courts must review whether the amendatory veto changes disturb the basic purpose of the legislation or alter the system prescribed for carrying that purpose out. *244 County of Kane v. Carlson (1987), 116 Ill.2d 186, 216, 107 Ill.Dec. 569, 581, 507 N.E.2d 482, 494; see Klinger, 50 Ill.2d at 249, 278 N.E.2d at 88.
We find that the Governor's recommended changes simply clarify the fact that State supervisors are subject to the "preponderance" requirement of section 3(r) of the Act. The legislative intent is ascertained by a plain and unambiguous reading of the statute at issue. The Board's decision and order are affirmed on these grounds.
In passing, we note that public statements made by legislators who are in a position to clarify legislative meaning carry weight and are helpful to the courts in determining legislative intent. (Maiter v. Chicago Board of Education (1980), 82 Ill.2d 373, 385-86, 47 Ill.Dec. 721, 726, 415 N.E.2d 1034, 1039.) Therefore, the Board and employer's argument that Representative Grieman's comments regarding public sector supervisors were not relevant is not persuasive. See Chief Judge, 209 Ill. App.3d at 289, 154 Ill.Dec. at 143, 568 N.E.2d at 143.
We turn next to the issue raised by AFSCME on its cross-petition, whether the Board erred in its interpretation of the term "preponderance." The Board defines "preponderance" in the context of section 3(r) of the Act as meaning that supervisors must spend a "significant allotment" of their time exercising their supervisory authority. According to the Board and the employer, "significant allotment" involves a comparison of three or more activities, including supervisory activities, and will be satisfied if the supervisory activities amount to a "significant allotment" of the supervisor's time. (In a situation involving three activities, a "significant allotment" of supervisory activities would amount to more than 33.3%.) AFSCME contends that "preponderance" means that supervisors must spend a "majority," or more than 50%, of their time engaged in supervisory activities.
AFSCME argues that this issue is a matter of first impression in this State and that there is a split between the Local Labor Relations Board (Local Board), the Educational Labor Relations Board (Educational Board) and the Board construing identical language in a related act. (See Ill.Rev. Stat.1989, ch. 48, par. 1702(g).) The Local Board and the Educational Board construe "preponderance" to mean that supervisors must spend a "majority," or more than 50%, of their time engaged in supervisory activities. AFSCME also argues that the dictionary definition of "preponderance" and the holdings of this court support the construction of the Local Board and the Educational Board.
Again we are guided by the primary rule of statutory interpretation, that is, to ascertain and effectuate the true meaning and intent of the legislature. (Buffalo, 180 Ill. App.3d at 595, 129 Ill.Dec. at 600, 536 N.E.2d at 440.) This is accomplished by giving the legislative language at issue its plain and ordinary meaning, and if a court can ascertain the intent from it, the language will be given effect by the court without resorting to other aids for construction. Buffalo, 180 Ill.App.3d at 595, 129 Ill.Dec. at 600-01, 536 N.E.2d at 440-41.
The dictionary definition of "preponderance" is "a superiority or excess in number or quantity[;] * * * majority." (Webster's Third New International Dictionary 1791 (1976).) Webster's defines "majority" as "a number greater than half of a total." (Webster's Third New International Dictionary 1363 (1976).) A literal reading of the language at issue is that the term "supervisor" includes only those individuals who devote a majority of their employment time to exercising such authority. The purpose behind the four prongs of section 3(r) of the Act is to determine whether an employee is a supervisor. Therefore, the only inquiry that the Board is concerned with is whether the individual is a supervisor or an employee a majority of his or her employment time. We hold that the Board erred as a matter of law in requiring a showing that the employee was engaged in supervisory activities a "significant allotment" of the time. This construction of the term *245 "preponderance" is contrary to the plain and ordinary meaning of the term. The Board erred in its construction of the term "preponderance." Cf. Black's Law Dictionary 1064 (5th ed. 1979) (defining "preponderance of the evidence"); Moss-American, Inc. v. Illinois Fair Employment Practices Comm'n (1974), 22 Ill.App.3d 248, 259, 317 N.E.2d 343, 351 (defining "preponderance of the evidence" as "the greater weight of the evidence, not necessarily in numbers of witnesses, but in merit and worth that which has more evidence for it than against it is said to be proven by a preponderance").
The Board attempts to justify its adoption of the "significant allotment" standard in its decision in City of Burbank, 1 Pub. Employee Rep. (Ill.) par. 2008, No. S-RC45 (Illinois State Labor Relations Board, June 6, 1985). In City of Burbank, the Board adopted the standards and rationale of the hearing officer citing similar language from a Federal statute (5 U.S.C. § 7103(a)(10) (1982)), which contained the "preponderance" standard. The hearing officer relied on two Federal Labor Relations Authority (FLRA) cases to support his position that "the most significant allotment" of an employee's time, as opposed to more than 50% of employment time, is the appropriate standard. Veterans Administration Hospital, Tucson, Arizona (1980), 4 F.L.R.A. No. 21, at 124; see also Veterans Administration Medical Center, Fayetteville, North Carolina (1982), 8 F.L.R.A. No. 115, at 660.
A review of these FLRA cases, however, does not support the Board's proposition of law that the FLRA utilizes a "significant allotment" standard. In Veterans Administration Hospital, Tucson, Arizona, the FLRA did not address or discuss the meaning of the terms "preponderance" or "significant allotment." In fact, the issue involved in this case was whether the employee performed supervisory functions more often than nonsupervisory functions. In Veterans Administration Medical Center, Fayetteville, North Carolina, the FLRA did address an issue involving the interpretation of the term "preponderance." FLRA framed the critical inquiry under section 7103(a)(10) of the Federal Labor-Management and Employee Relations Act (5 U.S.C. § 7103(a)(10) (1982)) as "whether a head nurse is primarily a supervisor or primarily a rank-and-file employee during a majority of her employment time." (Emphasis added.) (Veterans Administration Medical Center, Fayetteville, North Carolina, 8 F.L.R.A. No. 115, at 660.) This inquiry is consistent with our analysis. Therefore, we conclude that the Board's reliance on these two FLRA cases was erroneous, and does not support its application of the "significant allotment" standard.
The Board and the employer next argue that City of Freeport v. Illinois State Labor Relations Board (1990), 135 Ill.2d 499, 143 Ill.Dec. 220, 554 N.E.2d 155, supports their position that the Board did not err in employing its "significant allotment" interpretation of the term "preponderance." They argue that the supreme court's assumption of the "significant allotment" standard is an implicit acceptance of the Board's construction. We disagree.
Although the court in Freeport assumed the Board's construction of "preponderance" for the purpose of its discussion, the issue presented to the court was whether the Board erred in its application of section 3(r) of the Act to the City of Freeport's police department and the Village of Wheeling's fire department. (Freeport, 135 Ill.2d at 503, 143 Ill.Dec. at 223, 554 N.E.2d at 158.) Freeport did not discuss or confront the meaning of the term "preponderance," and it cannot be considered precedent for our decision.
We turn next to the remaining issues raised by AFSCME and the employer. AFSCME argues that the Board's holding that the "downstate" CWS's were supervisors was against the manifest weight of the evidence, while the employer argues that the Board's holding that the Cook County CWS's were not supervisors under section 3(r) of the Act was against the manifest weight of the evidence.
Judicial review of the Board's decisions is governed by the Administrative Review *246 Law. (Ill.Rev.Stat.1989, ch. 110, par. 3-101 et seq.) An agency's findings and conclusions on questions of fact shall be considered prima facie true and correct. (Ill. Rev.Stat.1989, ch. 110, par. 3-110.) Only where the reviewing court determines that the agency's findings of fact are against the manifest weight of the evidence, and it is clearly evident that the agency should have reached the contrary conclusion, will the agency's findings be reversed. Freeport, 135 Ill.2d at 507, 143 Ill.Dec. at 224, 554 N.E.2d at 159.
We have reviewed the factual findings of the hearing officer as adopted by the Board and find that they are not against the manifest weight of the evidence. The hearing officer found that the "downstate" CWS's spent between 65% and 90% of their time engaged in supervisory functions. This finding clearly satisfies the "preponderance" requirement of section 3(r) of the Act.
The hearing officer found that the Cook County CWS's did not meet the "preponderance" requirement because they did not spend a "significant allotment" of their time engaged in supervisory activities. The hearing officer did not make a finding based on a percentage. However, because we have already concluded that "significant allotment" is a lesser measure than the "majority of time" standard, we find that the Cook County CWS's did not meet the "preponderance" requirement.
The Board's findings as to the "downstate" and Cook County CWS's are affirmed.
The decision and order of the Board is affirmed.
Affirmed.
McCUSKEY, P.J., and BRESLIN, J., concur.