558

PAUL CELLA, Indiv. and on Behalf of All Similarly Situated Present and Future Employees and Trustees, and the Widowed Spouses thereof, of Metropolitan Water Reclamation District of Greater Chicago (f/k/a Metropolitan Sanitary District of Greater Chicago), Plaintiffs-Appellants, v. SANITARY DISTRICT EMPLOYEES' AND TRUSTEES' ANNUITY AND BENEFIT FUND, Defendant-Appellee.

First District (1st Division)    No. 1—92—1576

Opinion filed August 29, 1994.

Garbutt & Jacobson, Associated, and David A. Novoselsky & Associates, both of Chicago (Jerome J. Jacobson, David A. Novoselsky, and Kevin S. Besetzny, of counsel), for appellants.

Vedder, Price, Kaufman & Kammholz, of Chicago (Robert J. Moran, Charles B. Wolf, and Steven G. Rudolf, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Paul Cella, is a former employee of the Metropolitan Water Reclamation District of Greater Chicago (formerly known as the Metropolitan Sanitary District of Greater Chicago) (hereinafter District). On December 12, 1989, plaintiff, individually, and on behalf of all other similarly situated past, present and future employees of the District, and the widowed spouses and trustees thereof, filed a class-action complaint for declaratory judgment against defendant, the Sanitary District Employees' and Trustees' Annuity and Benefit Fund, seeking a declaration that defendant "acted arbitrarily and capriciously and in violation of constitutional and statutory provisions when it failed to properly calculate the average final salary in regards to [the] pension of plaintiff and other members of plaintiff's class as well as the determination of the damages due plaintiffs resulting from the incorrect calculation of pension amounts." The trial judge granted defendant's motion for summary judgment (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992))) on the ground that plaintiff failed to show that defendant's in-

terpretation of section 13—115 of the Illinois Pension Code (hereinafter Code) (Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 13—115), which governs the method of computing pension benefits for district employees, was "clearly erroneous, arbitrary or unreasonable." On appeal, plaintiff contends that the trial judge erred in granting defendant's motion for summary judgment because defendant breached its fiduciary duty to plaintiff in a wilful and wanton manner by failing to provide plaintiff with the highest possible level of pension benefits.

According to the Code, the amount of a District annuitant's retirement annuity is calculated based upon a determination of that annuitant's "average final salary." (Ill. Rev. Stat. 1991, ch. 108$^1$/$_2$, par. 13—302 (now 40 ILCS 5/13—302 (West 1992)).) Plaintiff retired from the District on April 29, 1988. At that time, the Code defined an annuitant's "average final salary" as:

> "The highest average annual *earnable salary* for any *24 consecutive months* within the last 10 years of service immediately preceding the date of retirement." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 13—115.)

Additionally, the Code defined "earnable salary" as:

> "The full rate of salary payable for the full normal working time for the position, subject to the applicable work schedule governing hours or days of service for the respective positions prescribed by the sanitary district, and as defined by the rules of the retirement board. Earnable salary shall not exceed the limitations set forth under the definition of 'Salary.' " (Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 13—114.)

Subsequently, the definition of "average final salary" was amended as follows:

> "The highest average annual *earnable salary* for any *104 consecutive weeks* within the last 10 years of service immediately preceding the date of retirement." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 108$^1$/$_2$, par. 13—115.[1]

According to the evidence, defendant does not actually calculate an annuitant's retirement benefits. Rather, defendant has delegated the responsibility of making the necessary calculations to the annuity firm of Donald Campbell & Associates (hereinafter the firm). Donald

---

[1]We note that, effective January 1, 1992, the legislature amended the Code again. Section 13—114, which defined "earnable salary," was repealed and the definition of "average final salary" was amended as follows:

> "The highest average annual salary for any *52 consecutive pay periods* within the last 10 years of service immediately preceding the date of retirement." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 108$^1$/$_2$, par. 13—208 (now 40 ILCS 5/13—208 (West 1992)).

Campbell testified that defendant never provided his firm with any rules, regulations or guidelines to follow when calculating annuities nor did defendant provide an official definition of "average final salary." Campbell stated that the firm calculates annuities for defendant by looking at an annuitant's highest earnable salary received during 52 consecutive biweekly pay periods. According to Campbell and several other employees at the firm, they assume that there is a maximum of 260 working days in a calendar year. Thus, the firm calculates an annuitant's average final salary for a 24-month period by counting back 520 working days from the annuitant's date of retirement without regard to the actual number of days actually worked in a given year.

According to the firm's calculations, plaintiff's average final salary was $67,644.12. This determination was based upon the following salary amounts which the firm concluded plaintiff received in the 24-month period immediately preceding his retirement: $25,690.10 for 1988, $67,791.91 for 1987, and $41,806.22 for the portion of 1986 which fell within the remaining 24-month period. The firm arrived at these salary amounts by its method of subtracting 520 working days from plaintiff's date of retirement. Campbell stated that this meant that their calculations began on May 3, 1986.

Plaintiff asserts, however, that his average final salary was $68,024.17, which is equivalent to $380.05 more per year than the amount calculated by the firm. He arrives at this figure by breaking his biweekly salary down into a daily rate of pay, ascertaining the actual number of days he worked in the 24-month period preceding his retirement, and then multiplying his actual work days by his "daily" pay rate. Plaintiff's amount is higher than that calculated by the firm because he retired on a Friday in a leap year and thus he actually worked 523 days during the applicable 24-month period.

Defendant filed a motion for summary judgment on the ground that its interpretation of the statute and manner of calculating annuities was not arbitrary, capricious or unreasonable. The trial judge granted defendant's motion. In reaching his conclusion, the judge noted that deference must be given to defendant's interpretation of the statute and that defendant's interpretation will not be disturbed unless it is "clearly erroneous, arbitrary or unreasonable." (*Rodgers v. Department of Employment Security* (1989), 186 Ill. App. 3d 194, 198, 542 N.E.2d·168, 170.) He determined that any ambiguity in the statute was removed when the legislature amended section 13—115 by substituting the term "104 consecutive weeks" for the term "24 consecutive months." Therefore, the judge concluded:

"[Defendant's] current approach treats all employees consis-

tently, treating all retirees with identical work histories as receiving the same benefits, whereas Defendant's [*sic*] proposed method would make benefits dependent upon fortuitous events, such as the existence of a leap year within the computation period. Unlike the Plaintiff's proposed method, [defendant's] recognizes that District employees receive their entire budgeted annual salary over twenty-six pay periods and is consistent with the District's intent that the change in payroll systems from bimonthly to bi-weekly would not result in an increase or decrease in salaries. Further, under the Plaintiff's scheme, retirees with identical work histories would receive different pension benefits based on such fortuitous events as the date of the individual's retirement or the existence of a leap year within the twenty-four month computation period.

\* \* \*

Plaintiff has failed to show that the [defendant's] interpretation is arbitrary and capricious. Defendant has set forth a rational basis for the method of computation, one that promotes consistent treatment among similarly situated retirees. It appears that the increase Plaintiff advocates is based on the type of fortuitous event—the occurrence of a leap year within the twenty-four month period—which the [defendant's] method is meant to avoid. The Defendant's motion for summary judgment in its favor is granted."

The sole issue on appeal is whether the trial judge erred in granting defendant's motion for summary judgment because defendant breached its duty to plaintiff in a wilful and wanton manner by failing to provide plaintiff with the highest possible level of pension benefits.

Defendant asserts that, as an agency charged with the administration and enforcement of the Code, we must give deference to its interpretation of section 13—115 and, unless its manner of calculating pension benefits is arbitrary and capricious, must affirm the trial court's entry of summary judgment. Defendant maintains that this deferential standard is further enhanced by the fact that its method of calculating annuities has been applied consistently over a number of years without objection. It argues that it is reasonable to determine an annuitant's highest average annual earnable salary over 24 consecutive months by reviewing 52 full biweekly pay periods because such a method of calculation is consistent with the common understanding and practice that a year consists of 52 weeks and not 52 weeks plus one or two additional days. Defendant also asserts that its interpretation treats all employees equally and on a consistent

basis whereas plaintiff's method would result in annuitants with identical work histories receiving different benefits based upon such fortuitous events as the day of retirement and the existence of a leap year within the 24-month computation period. Thus, conceding that its method of calculating annuities may not be the best possible interpretation of section 13—115, defendant argues that it has a rational justification and must be upheld.

Plaintiff, on the other hand, contends that defendant has breached its statutorily imposed fiduciary duty to plaintiff (Ill. Rev. Stat. 1991, ch. 108$^1$/$_2$, pars. 1—101.1, 1—109 (now 40 ILCS 5/1— 101.1, 1.109 (West 1992))) by failing to provide him with the highest possible level of pension benefits. Plaintiff asserts that using 520 working days to calculate his annuity without regard to the actual number of days worked, which he calculates to be 523 days, effectively reduces his annuity. Plaintiff argues that he has made his pension contributions on the basis of each creditable working day and, therefore, it is a breach of defendant's fiduciary duty to calculate benefits without giving credit for every actual working day. Plaintiff also maintains that we should not give deference to defendant's position because defendant has never interpreted the statute; it has merely accepted the calculations of Donald Campbell & Associates. Finally, plaintiff contends that defendant's motion for summary judgment should have been denied because plaintiff's method of calculating annual salaries "is a plausible alternative."

■ Summary judgment should only be granted when, after viewing the pleadings, affidavits and any other evidence on file in the light most favorable to the nonmovant, it is clear that there is no material issue of fact in question and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992)).) When interpreting a statutory provision and attempting to determine the legislature's intent, "a court must give the legislative language its plain and ordinary meaning." (*Village of Buffalo v. Illinois Commerce Comm'n* (1989), 180 Ill. App. 3d 591, 595, 536 N.E.2d 438, 441.) Legislative intent is clear when the language of the provision is plain and unambiguous and it will be given effect as written "without resorting to other aids for construction." *Village of Buffalo*, 180 Ill. App. 3d at 595, 536 N.E.2d at 441.

■ When a statutory provision is ambiguous, however, and legislative intent cannot be ascertained from the plain and ordinary meaning of its language, the court may look to the nature, purpose and necessity of the statute, any evils the statute was intended to remedy, and the consequences of each alternative construction. (*Village of Buffalo*, 180 Ill. App. 3d at 595, 536 N.E.2d at 441.) A

court will give substantial weight and deference to interpretations of ambiguous statutes by the administrative agency or body which is charged with the application and enforcement of the statute because "courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise." (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53, 447 N.E.2d 295, 300; *Village of Buffalo*, 180 Ill. App. 3d at 596, 536 N.E.2d at 441.) Additionally, a court may give greater weight to an administrative interpretation of an ambiguous statutory provision when that interpretation "[has] been consistently adhered to for a long period of time." (*Illinois Consolidated Telephone*, 95 Ill. 2d at 153, 447 N.E.2d at 300.) Even in light of this deference, however, a court still has the authority to independently construe a statute and it will not adopt an agency's interpretation if it is inconsistent with the language of the statutory provision. *Illinois Consolidated Telephone*, 95 Ill. 2d at 153, 447 N.E.2d at 300.

■ Plaintiff retired on April 29, 1988. At that time, the Code defined an annuitant's "average final salary" as:

> "The highest average annual earnable salary for any 24 consecutive months within the last 10 years of service immediately preceding the date of retirement." (Ill. Rev. Stat. 1987, ch. 108$^{1}/_{2}$, par. 13—115.)

Defendant calculated plaintiff's retirement annuity by subtracting 520 days from April 29, 1988, plaintiff's date of retirement. Therefore, according to defendant's calculations, plaintiff's average final salary was determined based on the period from May 3, 1986, through April 29, 1988. Plaintiff, on the other hand, points out that he retired in a leap year and that in the relevant 24-month period he actually worked 523 days. He asserts, therefore, that his average final salary should have been determined based upon the period from April 29, 1986, through April 29, 1988.

■ It is readily apparent from a cursory reading of section 13—115 that defendant's manner of calculation is clearly erroneous and that plaintiff's annuity should have been based upon the period from April 29, 1986, through April 29, 1988. Although we reach the same ultimate conclusion as plaintiff as to the proper period of time to be utilized when calculating annuities, we do so for reasons different from those he has advanced. In fact, in our opinion, none of plaintiff's assertions address the true issue and the fact that we agree on the proper time period is purely coincidental.

For instance, plaintiff asserts that we should not give deference to defendant's position because defendant has not interpreted the statute, but rather has delegated that duty to Donald Campbell &

Associates. Consequently, he contends that defendant should not have been granted summary judgment because plaintiff's method of calculation is "a plausible alternative." At best, these assertions are peripheral to the one argument plaintiff has failed to make. *Namely, that section 13—115 of the Code is NOT ambiguous.* As we stated above, an administrative agency's interpretation of a statute is only entitled to deference if the provision in question is *ambiguous.* (See *Village of Buffalo,* 180 Ill. App. 3d at 595, 536 N.E.2d at 441.) When language in a statutory provision is plain and unambiguous, it will be given effect as written. *Village of Buffalo,* 180 Ill. App. 3d at 595, 536 N.E.2d at 441.

The term "24 consecutive months" is unambiguous. In this case, it covers the period from plaintiff's date of retirement (April 29, 1988) back to the corresponding day in the corresponding month two years earlier (April 29, 1986). Defendant asserts that its method of calculation is consistent with the common understanding and practice that a year consists of 52 weeks and not 52 weeks plus one or two additional days. Even assuming this assertion to be true, however, its method of calculation is not consistent with the statute, which mandates that annuities are to be determined based upon *24 months,* and not days, weeks or years. We point out that section 1.10 of the Statute on Statutes (Ill. Rev. Stat. 1991, ch. 1, par. 1011 (now 5 ILCS 70/1.10 (West 1992))) states:

> " 'Month' means *a calendar month,* and the word 'year,' a calendar year unless otherwise expressed; and the word 'year' alone, is equivalent to the expression 'year of our Lord.' " (Emphasis added.)

Thus, the number of days or weeks in a month or a year should be irrelevant to the process of calculating an annuitant's average final salary under section 13—115. The Code does not provide that the word "month" as used in section 13—115 means anything less than a "calendar month." If the legislature intended that 24 months was to be interpreted as equivalent to 520 working days and not 24 calendar months, it easily could have so provided. It is not reasonable, therefore, for defendant to have calculated plaintiff's annuity based upon anything other than 24 *calendar* months. Consequently, defendant's method of calculating an annuitant's highest average annual earnable salary over 24 consecutive months by subtracting 520 working days (*i.e.,* 104 consecutive weeks) from his date of retirement is incorrect because this period will always be less than 24 calendar months. In support of our position, we note that our research has led us to a number of cases which have held "in a host of differing situations that the term 'month' means a calendar

month." (See *People v. Gilbert* (1962), 24 Ill. 2d 201, 203, 181 N.E.2d 167, 169 (and the cases cited therein); *People v. Walker* (1966), 34 Ill. 2d 23, 27, 213 N.E.2d 552, 554-55; *In re Marriage of Kennedy* (1988), 170 Ill. App. 3d 726, 730, 525 N.E.2d 168, 170.) In *Gilbert*, a criminal defendant claimed that the requirement that he must be set free if he has not been released on bail or brought to trial within "four months of the date of commitment" meant that a trial must be had within 120 days. The *Gilbert* defendant pointed out that, depending upon the month in which he is arrested, the number of days he may be held before trial would vary and leap years would alter the periods even more. Citing the definition of the term "month" in section 1.10 of the Statute on Statutes and a number of cases which had held that the term "month" means a calendar month, the *Gilbert* court rejected defendant's contention. The court stated that a calendar month is computed simply by running from a given day in one month to a day of that corresponding number in a preceding or succeeding month. (*Gilbert*, 24 Ill. 2d at 203, 181 N.E.2d at 169.) The *Gilbert* court also noted that when the legislature means to specify a specific number of days it is capable of doing so.

In *Kennedy* (170 Ill. App. 3d at 730, 525 N.E.2d at 170), the respondent was ordered by the court to reimburse petitioner for the reasonable attorney fees she incurred in her action to recover the amount respondent was in arrears on his child support obligation. Respondent was in arrears on his child support obligation because he had calculated his monthly payment by multiplying $50 per week by four weeks. The *Kennedy* court stated that "[f]or 11 months out of the year, and for 12 months during a leap year, four weeks do not equal one month. Respondent was capable of understanding the shortage his method of payment created ***." (170 Ill. App. 3d at 730.) Thus, Illinois courts have consistently held that one month equals one *calendar* month and, in this case, the annuity firm of Donald Campbell & Associates "was capable of understanding the shortage [its] method of payment created."

Defendant contends, however, that its interpretation treats all employees equally and on a consistent basis whereas plaintiff's method would result in annuitants with identical work histories receiving different benefits based upon such fortuitous events as the day of retirement and the existence of a leap year within the 24-month computation period. Plaintiff, on the other hand, argues that employee contributions to the pension fund are made on the basis of actual working days and, therefore, an annuitant's pension benefits must be calculated based upon the actual number of working days. Consequently, plaintiff asserts that an annuitant's salary must be

broken down into a daily salary rate and then his annual final salary must be based upon that rate.

First, plaintiff's argument incorrectly focuses on *days* when the statute employs the word "months." As the court in *Gilbert* stated in the context of the situation with which it was presented, "the period 'is computed not by counting days, but by looking at the calendar, and it runs from a given day in one month to a day of the corresponding number in the next or specified succeeding month, except where the last month has not so many days, in which event it expires on the last day of that month.' " (*Gilbert*, 24 Ill. 2d at 203, 181 N.E.2d at 169, quoting *Ropiequet v. Aetna Life Insurance Co.* (1941), 309 Ill. App. 346, 355, 33 N.E.2d 228, 233.) In this case, plaintiff retired on April 29, 1988, and the "corresponding number" 24 months earlier is April 29, 1986. It is his salary amount during this period which should have been used to calculate his "average final salary."

Defendant's assertion that plaintiff's method would result in annuitants with identical work histories receiving different benefits based upon such fortuitous events as the day of retirement and the existence of a leap year within the 24-month computation period is simply not true. This argument is very attractive, but it is a "red herring." Whether a leap year exists within the 24-month period would not result in annuitants with identical work histories receiving different benefits for the simple reason that an annuity is properly calculated based upon an annuitant's salary over "24 consecutive months" and not the number of days within that 24-month period. Days are irrelevant. As everyone on a salary knows, even though there is one extra day in a leap year, you do not earn more money during that year than you would during a regular year. Thus, whether a leap year occurs within the 24-month computation period would have no effect on the average final salary of an annuitant.

Finally, defendant asserts that the 1989 amendment to section 13—115 should be applied retroactively, that it clarifies any ambiguity in the statute and that it ratifies its current method of computation. Defendant argues that "there can be no doubt that the Illinois legislature merely intended for these amendments to eliminate all ambiguity which may have previously existed and, thus, ratified the [defendant's] method of computing average final salary." Plaintiff, on the other hand, contends that this amendment should have no retroactive effect because it was a substantive change which effectively reduced the period of time to be considered when determining an annuity.

The general rule is that an amendment to a statutory provision can only be applied prospectively unless the legislature expressly

provides that it is to have retroactive effect. (*Falato v. Teachers' Retirement Systems* (1991), 209 Ill. App. 3d 419, 425, 568 N.E.2d 233, 237.) If a statutory provision is ambiguous, however, and the amendment merely clarifies existing law, the foregoing general rule does not apply and the court may consider the amendment in order to determine the meaning of the ambiguous provision. (*Falato*, 209 Ill. App. 3d at 425, 568 N.E.2d at 237; *Willis v. Ohio Casualty Co.* (1981), 101 Ill. App. 3d 1099, 1104, 428 N.E.2d 1061, 1066.) The rationale behind this exception is that, while the amendment of an unambiguous statute indicates an intent to change the law, "no such purpose is indicated by the mere fact of an amendment of an ambiguous provision." *O'Connor v. A&P Enterprises* (1980), 81 Ill. 2d 260, 271, 408 N.E.2d 204, 209.

Effective August 29, 1989, the legislature amended section 13—115 by substituting the term "104 consecutive weeks" for the term "24 consecutive months." First, we note that section 1—103.1 of the Code provides:

> "Amendments to this Code which have been or may be enacted shall be applicable only to persons who, on or after the effective date thereof, are in service as an employee under the retirement system or pension fund covered by the Article which is amended, *unless the amendatory Act specifies otherwise.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 108½, par. 1—103.1 (now 40 ILCS 5/1—103.1 (West 1992)).)

Plaintiff was not in service as an employee at the time of the amendment and the amendment did not specify that it was to apply retroactively. Thus, amended section 13—115 does not apply retroactively.

We also do not believe it necessary to consider the amendment in order to determine the meaning of pre-amendment section 13—115. As we stated above, the term "24 consecutive months" is unambiguous and can be easily computed. Additionally, defendant's citation of the *Falato* case does not support its argument. In *Falato*, legislative history explicitly indicated that the amendments to the Code made "numerous *clarifying and simplifying* and other technical changes and remove[d] obsolete material" and that "the Bill *contains no substantive changes.*" (Emphasis in original.) (*Falato*, 209 Ill. App. 3d at 425, 568 N.E.2d at 237.) In this case, there are no legislative pronouncements which evidence an intent to merely clarify and simplify. Therefore, in light of the fact that pre-amendment section 13—115 is unambiguous, plaintiff retired prior to the amendment, and the Act does not explicitly provide that the amendment is to apply retroactively, the amendment only has prospective effect.

Consequently, plaintiff's retirement annuity should be calculated

based upon the period from April 29, 1986, through April 29, 1988. Although the sole issue before us was whether summary judgment was properly granted, we do not believe it improper to point out that both parties have focused upon "days" when calculating plaintiff's average final salary. Therefore, while defendant's manner of calculating "average final salary" is clearly erroneous, plaintiff's calculations cannot be relied upon either.

Accordingly, for the foregoing reasons, we reverse the trial judge's granting of defendant's motion for summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL, P.J., and MANNING, J., concur.